EDEN IRR. CO. et al., v. DISTRICT COURT OF WEBER COUNTY et al.

No. 3847.   Decided December 13, 1922.   (211 Pac. 957.)

1. STATUTES—ACT CONCERNING WATER AND WATER RIGHTS NOT INSUFFICIENT AS TO TITLE AND NOT TO CONTAIN MORE THAN ONE SUBJECT. Laws 1919, c. 67 entitled "An act defining general provisions concerning water and water rights, the appropriation, administration, adjudication and use of water and water rights, and, repealing chapters 1, 2, 3, and 4, title 55, of the Compiled Laws of Utah, 1917, and all laws of Utah in conflict herewith," and providing for the appropriation and use of water and also the administration of the law respecting water rights, covering many details, is not void on the ground that its title is not sufficient, or that the act contains more than one subject.[1]

---

[1] *Marioneaux* v. *Cutler*, 32 Utah, 475, 91 Pac. 355; *Edler* v. *Edwards*, 34 Utah, 13, 95 Pac. 367; *Salt Lake City* v. *Wilson*, 46 Utah, 60, 148 Pac. 1104; *Mutart* v. *Pratt*, 51 Utah, 246, 170 Pac. 67.

2. STATUTES—GENERAL STATEMENT OF SUBJECT SUFFICIENT, THOUGH ACT COVERS MANY DETAILS. There is no constitutional restriction as to the scope or magnitude of a single subject of a legislative act, and a general statement of the subject is sufficient, although the act may cover many details.

3. STATUTES—ALL THAT IS GERMANE TO SUBJECT STATED IN TITLE MAY BE INCLUDED IN ACT. All that is germane to the subject stated in the title may be included within the act, without making it vulnerable to the constitutional provision that no bill be passed containing more than one subject which shall be clearly expressed in its title.

4. STATUTES—LENGTH OF ACT UNIMPORTANT SO LONG AS ALL THINGS THEREIN ARE GERMANE TO THE SUBJECT. The length of an act and the extent of its details are not important, so long as all things contained therein are germane to the subject legislated upon.

5. CONSTITUTIONAL LAW—WATERS AND WATER COURSES—PROVISION NOTICE OF PROCEEDINGS TO DETERMINE WATER RIGHTS ACT SATISFIES DUE PROCESS CLAUSE. Water Rights Act, Laws 1919, c. 67, provides for the bringing of actions to determine the rights to the use of water and to make all persons who use water or claim rights in the water of any particular stream parties thereto, and in providing for notice by personal service, publication, and by registered mail and giving opportunity to obtain relief in case interested parties have not had personal service, the requirement of due process is met.

6. CONSTITUTIONAL LAW—WATER RIGHTS ACT DOES NOT CONFER JUDICIAL POWERS ON STATE ENGINEER. Under Laws 1919, c. 67, §§ 32, 33, providing that the state engineer shall, after investigation, formulate a proposed determination of the rights to use water and mail notice thereof to all claimants interested, and that, if no contest is made, the court shall render judgment in accordance with such proposed determination, does not confer judicial powers on the state engineer, as claimants after notice may file objections and judgment will be entered in accordance with the evidence, and if no objection is made, a claimant by his silence confesses statements contained in the determination.

7. WATERS AND WATER COURSES—STATE ENGINEER UNDER WATER RIGHTS ACT CANNOT INTERFERE WITH ADJUDICATED RIGHTS. Under Laws 1919, c. 67, the state engineer in formulating a proposed determination of rights to use water has no right to interfere with adjudicated or vested rights, section 32 providing that where rights to the use of water from a stream or body

of water have been adjudicated, the "waters shall be distributed in accordance with such decree until the same be reversed, modified, vacated, or otherwise legally set aside."

8.    EVIDENCE—COMMON KNOWLEDGE THAT WATER USERS MAY ABUSE RIGHTS FIXED BY DECREE. It is a matter of common knowledge that water users who have had their rights adjudicated may nevertheless abuse or transcend their rights as fixed by the court's decree.

9.    CONSTITUTIONAL LAW—WATERS AND WATER COURSES—WATER RIGHTS ACT DOES NOT UNREASONABLY INTERFERE WITH VESTED RIGHTS TO WATER. A vested right to waste water cannot be acquired, and as Laws 1919, c. 67, does not interfere so long as water is used in accordance with the terms of a prior decree, the matter for determination being only whether the user is wasting water, the procedure under the act is not an interference with a vested right.

10.   STATUTES—WATER RIGHTS ACT HELD NOT SPECIAL LAW REGULATING PRACTICE OF COURTS. Water Rights Act is not a special law regulating the practice of courts of justice prohibited by Const. art. 6, § 26.

Original prohibition by the Eden Irrigation Company and others against the District Court of Weber county and another. Alternative writ quashed, and peremptory writ denied.

*Halverson & Pratt,* of Ogden, for plaintiffs.

*Harvey H. Cluff,* Atty. Gen., for defendants.

FRICK, J.

, The Eden Irrigation Company and others, not necessary to be named, joined as plaintiffs in an application to this court for a writ of prohibition against the district court of Weber county and the Hon. James N. Kimball, as judge of said court. We shall hereinafter refer to the district court only.

In their application plaintiffs asked that said district court be prohibited from proceeding further in a certain

action pending in said court, which was commenced pursuant to the provisions of chapter 67, Laws Utah 1919, and in which action said court was proceeding in accordance with the provisions of chapter 67 aforesaid. Plaintiffs application is so voluminous that it is not practicable for us to state even the substance thereof in this opinion. In view, however, that plaintiffs do not complain that the district court did not strictly follow the provisions of said chapter 67, but, upon the contrary, allege that the court did strictly follow its provisions and contended that the court should, nevertheless, be prohibited from further proceeding in said action for the reason that certain provisions contained in said chapter 67 are unconstitutional and void, it is not necessary for us to refer further to the allegations of the application. That is true, although the district court through the defendant judge has filed a general demurrer to the application, and the case has been submitted to this court upon the allegations of the application and said demurrer.

Chapter 67 aforesaid, which is assailed here, is a very comprehensive act relating to the appropriation, use, and distribution of water for irrigation the adjudication of water rights, and cognate matters. The act is composed of 80 sections, some of which are very long in themselves. In view of the length of the act we can do no more in this opinion than to refer generally to some of the provisions of the act and make special reference to some of those provisions that are specifically assailed as being repugnant to the provisions of our Constitution.

It is first insisted that the whole act is void (1) because the title thereof is insufficient, and (2) because the act itself contains more than one subject. The act is an independent act, in which large parts of former acts upon the same subject are merely re-enacted, while other parts are changed and re-enacted as changed, and still other parts are added as new matter.

Proceeding to a consideration of the first objection: The title of the act is "An act defining general provisions con-

cerning water and water rights, the appropriation, adminis-
tration, adjudication and use of water and water rights, and
repealing chapters 1, 2, 3, and 4, title 55 of the Compiled
Laws of Utah, 1917, and all laws of Utah in conflict here-
wth.'' Counsel urge that the title is defective in that it
does not clearly express the subject of the act, which pro-
vides for the appropriation and use of water and also
for the administration of the law respecting water
rights. It will be observed that the language of the
title is quite general, but it must also be conceded that it is
quite comprehensive. A general statement of the subject
of the act is sufficient, although the act may cover many
details. ''There is no constitutional restriction as to the
scope or magnitude of the single subject of a legislative act.''
1 Lewis' Sutherland, Stat. Const. (2d Ed.) § 117.

The law, as declared by the courts upon the question now
under consideration, is clearly and tersely stated by the
author just quoted from in the volume aforesaid in section
121, in the following words:

"The title must state the subject of the act for the purpose of
information to members of the Legislature and public while the bill
is going through the forms of enactment. It is not required that
the title should be exact and precise. It is sufficient if the lan-
guage used in the title, on a fair construction, indicates the purpose
of the Legislature to legislate according to the constitutional pro-
vision; so that making every reasonable intendment in favor of the
act, it may be said that the subject or object of the law is expressed
in the title."

The author, in the same section, further says:

"No particular form has been prescribed in the Constitution for
expressing the subject or purpose of a statute in its title. *It need
not index the details of the act, nor give a synopsis of the means by
which the object of the statute is to be effectuated by the provisions
in the body of the act.*" (Italics ours.)

When counsel's criticisms of the title are fully considered
and analyzed, they merely amount to this: That the title
is insufficient because it fails to state a synopsis of all the
provisions of the act and does not give a complete index to
its contents or details. If the language of the act in
question is carefully considered, it will be seen that

it covers all matters relating to the appropriation of water, to the administration of the law respecting those matters, and to the "adjudication and use of water and water rights." It is now judicially settled beyond dispute that all that is germane to the subject stated in the title may be included within the act without making it vulnerable to the constitutional provision before referred to.

Nor is the body of the act open to the objection that it contains a multiplicity of subjects. There is absolutely nothing in the act that is not germane to the subject which is expressed in the title. The law is again well settled that the length of the act and the extent of its details are not important so long as all things contained in the act are germane to the subject legislated upon therein. We have carefully examined the act from beginning to end, and can find nothing therein which is not clearly germane to the subject as expressed in the title.

We have had frequent occasion to pass upon the question of the sufficiency of legislative titles and whether acts contain more than one subject, and the statements of the law as generally adopted by courts, as well as by this court, will be found in the following cases decided by this court: *Marioneaux* v. *Cutler*, 32 Utah, 475, 91 Pac. 355; *Edler* v. *Edwards*, 34 Utah, 13, 95 Pac. 367; *Salt Lake City* v. *Wilson*, 46 Utah, 60, 148 Pac. 1104; *Mutart* v. *Pratt*, 51 Utah, 246, 170 Pac. 67. It would be useless to add anything to what is said in the decisions in those cases. Nor is it necessary to cite the numerous authorities that are referred to and reviewed in them.

It is, however, strenuously insisted that various provisions of the act in question are repugnant to certain provisions of our Constitution, in that the act confers judicial powers upon a mere administrative officer—the state engineer. It is not necessary to state, either generally or in detail, the various provisions in which the state engineer is vested with certain powers respecting the appropriation, distribution, use, and adjudication of water and water rights. It must suffice to say that the act provides for the bringing of actions to de-

termine the rights to the use of water and to make all persons who use water or who claim rights in the water of any particular stream or body of water parties to such actions. The act further provides for the service of notice in three different ways, (a) personal service, (b) by publication, and (c) by registered mail. There can be no question respecting the sufficiency of notice to meet the objection of due process of law. Then again, the act provides for ample opportunity to obtain relief in case any interested party makes affidavit that he has not had personal service. It also provides that in case of a pending action the state engineer shall serve blank forms upon all parties to the action, requiring each one of them to state precisely what water he claims, etc. After the claims of all the parties are all in, the engineer is required to tabulate such claims, and all the claims filed, and after making measurements and obtaining other facts the engineer is required to make a preliminary or proposed statement for the use of the court, in which the rights of each claimant is stated in full. The act also provides that this statement must be served upon each claimant and that the claimant must thereafter, within a specified time, file his objections, if any he has, to the proposed statement or determination of the engineer. Provisions are also made for amendments to any pleading or statement, or to any objection that has been filed, and the court may grant additional time within which statements and objections and other matters may be filed. There are numerous other provisions in which the rights of interested parties are fully protected.

Inasmuch as the provisions of section 32 are specifically objected to for the alleged reason that those provisions confer judicial powers upon the state engineer, we copy that section in full. It reads.

"After full consideration of the statements of claims, the surveys, records and files, and after a personal examination of the river system or water source involved, if such examination is deemed necessary, the state engineer shall formulate a proposed determination of all rights to the use of the water of such river system or water course, and a copy of such proposed determination

shall be mailed by regular mail to each claimant, with notice that any claimant dissatisfied with such determination may within ninety days from such date of mailing file with the clerk of the district court a written objection thereto duly verified on oath. The state engineer shall distribute the waters in accordance with said proposed determination until a final decree is rendered by the court, or until the court shall instruct him otherwise. Provided that the right to the use of said waters have not been theretofore decreed or adjudicated, *but if formally decreed and adjudicated, said waters shall be distributed in accordance with such decree until the same is reversed, modified, vacated, or otherwise legally set aside.*" (Italics ours.)

The following portion of section 33, it is likewise insisted, is vulnerable to counsel's objections:

"If no contest on the part of any claimant or claimants shall have been filed, the court shall render a judgment in accordance with such proposed determination which shall determine and establish the rights of the several claimants to the use of the water of said river system or water source." '

Counsel strenuously insist that in view that in all cases where no contest or objections have been filed the district court is required to render judgment in accordance with the engineer's proposed determination, and that such judgment shall establish the rights of the nonobjecting parties, the engineer is clothed with judicial powers contrary to the provisions of the Constitution.

This contention is clearly untenable. It will be observed that the determination of the engineer is merely a proposed determination and stands only in case "the court shall not instruct him [the engineer] otherwise." Then again, the act specifically provides that the proposed determination must be served upon each claimant. The claimant is therefore fully advised of the proposed amount of water the engineer proposes to award him, and in case he is dissatisfied with the rights as proposed by the engineer he may file his objection, and the court will then hear the case and enter judgment in accordance with the evidence.          6 Upon the other hand, if the claimant makes no objection, he, by his silence, does in legal effect precisely what every other person who is sued and makes default does,

namely, confess the statements contained in the engineer's proposed determination of his water rights, and thus a judgment may legally be entered in accordance with the proposed determination of the engineer. This is no more than entering a default judgment after a party by his silence has confessed the allegations of the complaint.

But quite apart from the fact, however, that in section 7 of the act the state engineer is limited to "general administrative" powers, the courts have had frequent occasion to pass upon provisions similar to those in the act now in question which confer certain powers upon state engineers or boards who act in lieu of state engineers. The Supreme Court of the United States in *Pacific Livestock Co.* v. *Oregon Water Board*, 241 U. S. at page 451, 36 Sup. Ct. 637, 60 L. Ed. 1084, after stating the objections that are urged against the law there in question, stated the third objection as follows:

"Third, because it [the law] requires that the board's findings and order, although only administrative in character, be followed and given effect in the distribution of the water pending the action of the circuit court upon them."

That is the precise objection that is made in the case at bar, namely, that the engineer's proposed determination is given effect, etc. The U. S. Supreme Court, however, answered the objection in the case aforesaid in the following language:

"A serious fault in this contention is that it does not recognize the true relation of the proceeding before the board to that before the court. They are not independent or unrelated, but parts of a single statutory proceeding, the earlier stages of which are before the board and the later stages before the court. In notifying claimants, taking statements of claim, receiving evidence and making an advisory report the board merely paves the way for an adjudication by the court of all the rights involved."

The only real difference between that case and the one at bar is that, under the law there in question, a board composed of several members made the proposed determination, while the state engineer makes it under the act in question.

It is, however, also contended with much vigor that the

act permits the engineer to interfere with vested rights, in that he may interfere with water rights that have been adjudicated and fixed by the court, etc. A complete answer to this contention is found in the act itself. The italicized portion of section 32 expressly provides that where the rights to the use of water from a stream or body of water have been adjudicated ''said water shall be distributed in accordance with such decree until the same be reversed, modified, vacated or otherwise legally set aside.'' There is, therefore, not even a semblance of a right given to the engineer to interfere with adjudicated or so-called vested rights.

It is, however, also insisted that the act permits an unreasonable interference with vested rights, in that the engineer or other persons may institute an action or actions to determine the water rights of a stream or body of water and in doing that may make all those who take water from the stream or body of water, including those with adjudicated rights, parties defendant, and may thus bring them into court and require them to again defend and relitigate their adjudicated rights. While it is true that all water users of a stream or body of water may be made parties and under certain circumstances may be required to defend their claims, no one is required to again litigate or defend rights which have been fixed by a decree of court, so long as he merely uses water in accordance with the terms of such decree and the quantity awarded to him thereby. It is a matter of common knowledge, however, that water users who have had their rights adjudicated may, nevertheless, abuse or transcend the rights as fixed by the court's decree. This may be done purposely or inadvertently, or through sheer negligence. The measuring and diverting devices may have become defective, and the user may thus divert more water in fact than is awarded in the decree. Again, after the decree was entered, much land adjacent to the water user's land lying higher in elevation may have been brought under cultivation and made productive by irrigation and a large part of the water used on those higher lands may, by seepage

and percolation, finally reach such water user's land and in that way indirectly irrigate his lands so that he can no longer economically use all the water that was awarded to him in the decree, and, having no other lands on which the surplus water can be used, he may actually waste a large portion of the water awarded to him by permitting it to run to waste in waste ditches, or, as in some cases is done, permitting it to run anywhere in obedience to the law of gravitation. Water may also be wasted in other ways. In this connection it must always be remembered that no hard and fast rule with regard to what constitutes a waste of water can be laid down as applicable to all cases. In this respect each case must be considered upon its own peculiar facts and circumstances. After a consideration of all of these things, the ultimate fact of whether a water user wastes water or not, and the extent thereof, must be determined. If, however, the state engineer is convinced that water is being wasted by any water user, whether he be one who has had his water rights adjudicated or not, why should not such user be brought into the court for the purpose of preventing the wasteful use of water and have the same applied to a beneficial use or purpose? Let it be remembered that no one can acquire a vested right to waste water in any form. In this arid country water is life and may not be wasted. In this connection it is of the utmost importance to remember that no one can acquire an absolute title to water as he can to other property. A person having absolute title to property generally may ordinarily waste it, destroy it, or permit it to go to decay and become utterly useless at his pleasure. This he may not do with water. He only obtains a right to the use of a specific quantity of water, and, if conditions change so that he can no longer make use of the water for a useful and beneficial purpose, he is not at liberty to waste it. The state, therefore, in its governmental capacity, has a right to regulate, within reasonable bounds the use of water although the right to the use may have been adjudicated. No doubt, in administering the law for the protection of all and for the public good, some

inconvenience will result. Such inconveniences, however, cannot be avoided and must be tolerated for the public good. Certainly no constitutional right are invaded by such inconveniences.

We have already pointed out, however, that although a user whose rights have been adjudicated may waste water the water must, nevertheless, be apportioned to him in accordance with the decree of the court until the fact that water is being wasted and the extent of such waste is judicially established; and when so established the decree may then be modified.

No vested rights therefore, are either assailed or affected by the act in question. Laws similar indeed, laws which in substance and effect are identical with the act in question, have been fully considered by the courts and held unassailable in the following, among other cases: *Vineyard L. & S. Co. v. District Court*, 42 Nev. 1, 171 Pac. 166; *Pacific Livestock Co. v. Lewis* (D. C.) 217 Fed. 95; Id. 241 U. S. 440, 36 Sup. Ct. 637, 60 L. Ed. 1084; *Farm Inv. Co. v. Carpenter*, 9 Wyo. 110, 61 Pac. 258, 50 L. R. A. 747, 87 Am. St. Rep. 918; *Enterprise Irr. Dist. v. Tri-State Land Co.*, 92 Neb. 121, 138 N. W. 171; *Pitt v. Scrugham*, 44 Nev. 418, 195 Pac. 1101; *In re Willow Creek*, 74 Or. 592, 144 Pac. 507, 146 Pac. 475.

The question that the act confers judicial powers upon the state engineer, with other cognate questions, is so thoroughly considered and determined, contrary to counsel's contention, in the Vineyard Case, above referred to, decided by the Supreme Court of Nevada under an act similar to ours (with the exception that there are several sections in that act which contains provisions which were held invalid, but which provisions are not part of the Utah act) that we refer the reader to that case. We could add nothing to what is there said, even if we felt inclined to do so. Moreover, if counsel are not convinced that their contentions are untenable after reading the decision in that case, and the cases therein cited, it would be a useless labor on our part to attempt to convince them.

Counsel, however, attempt to distinguish the cases cited from Oregon and Wyoming, in that the Constitutions of those states authorize the Legislature to legislate upon the question of water and water rights, etc. The contention is, however, without merit. The Constitutions of both Oregon and Wyoming are like ours with respect to the creation of courts and the conferring of judicial powers. The mere fact that there is a provision in the Constitutions of those states permitting the Legislatures to legislate upon the matters there stated is of no importance whatever. In the present day many things are found in state Constitutions which are of no material importance. When it is remembered that all power is vested in the people and that state Constitutions are not grants of power to the Legislature, but are mere limitations of power upon that body, it is not difficult to understand why the provisions in the Oregon and Wyoming Constitutions have no relevancy here. The Legislatures of those states could not have passed the laws in question precisely in the form they were passed without the constitutional permission. The Legislatures are but the agents of the people and, unless prohibited by some constitutional limitation, can legislate upon all questions that the people could authorize them to do without any authorization, and the mere fact that authority is given is important only in case such authority is coupled with a limitation, and then it is effective only to the extent of the limitation.

It is also important to keep in mind that neither the Supreme Court of Oregon nor that of Wyoming considered the constitutional provision counsel have referred to as of any importance in determining the question of judicial power. The constitutional provision referred to is therefore entirely eliminated.

Finally, it is insisted that the act in question offends against that provision of our Constitution (Const. art. 6, § 26) which prohibits the Legislature from enacting a special law "regulating the practice of courts of justice." This contention, it seems to us, is somewhat far-fetched. In the first place, we cannot conceive how the law in question is

special nor how it regulates the practice of courts of justice. Nothing of that character is attempted. Neither is that the effect of anything that is contained in the act. The question respecting the regulation of the waters of this state is a very comprehensive one and in some respects, for the purpose of simplifying and expediting the administration of the laws with respect to that matter and the protection of water rights, the Legislature no doubt would have the right to direct the courts how to proceed in certain matters, and, so long as the law applied to all courts and governed all persons claiming water rights, there is nothing special about such a law.

There are several other matters discussed by counsel, but they are of no importance, and it is not necessary to pursue the matter further. After a careful examination of the provisions of the act in question, viewed in the light of the decisions of the courts and the constitutional guaranties, we are firmly convinced that the law is not vulnerable to any of the objections urged against it, and that its provisions, in so far as they are assailed in this proceeding, are enforceable. As a matter of course, we express no opinion upon provisions not called in question in this proceeding.

The alternative writ of prohibition heretofore granted is therefore quashed, and the peremptory writ applied for is denied; costs to be taxed to plaintiffs.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.