MAMMOTH CANAL & IRRIGATION CO. et al. v. BURTON, Judge.

No. 4585.   Decided August 29, 1927.   (259 P. 408.)

*Abe Murdock,* of Beaver and *Wilson & Barnes,* of Salt Lake City, for plaintiffs.

*John Jensen* and *W. Hal Farr,* both of Salt Lake City, for defendant.

WOOLLEY, District Judge.

This is an original proceeding for a writ of prohibition directed to the Honorable Thomas H. Burton, as judge of the district court of Beaver county, Utah, to restrain that court from proceeding, under the provisions of Laws Utah 1919, c. 67, with a general determination of the rights to the use of the waters in what is called the Beaver river system under an order made and entered in an action pending in that court, entitled *William L. Hardy et al.,* Plaintiffs, v. *Delta Land & Water Company* and *Beaver County Irrigation Company,* Defendants, which will hereinafter be referred to as the Hardy action.

The Beaver river has its source in the Tushar range of mountains along the eastern border of Beaver county, Utah, and flows thence in a westerly direction through Beaver val-

ley to a point a short distance above the town of Miners-
ville, where it makes a turn and thence follows a general
westerly course. Where the river leaves the Beaver valley,
a dam, known as the Rocky Ford dam, has been constructed
across the channel of the stream, forming a reservoir used
for the impounding and storage of water to be used in the
irrigation of lands lying below. The Beaver river with its
tributaries constitutes what is called the Beaver river sys-
tem, and that system embraces the waters of the state in-
volved in this proceeding.

The plaintiffs in this action are all water users on the
upper part of the stream diverting and using the water
above the dam and reservoir mentioned. There has been
considerable litigation in the past involving water rights
in the Beaver river system. It commenced in territorial days.
It is yet unfinished. But the water rights of these plaintiffs,
and all of the rights above the Rocky Ford dam, as well as
the rights below the dam which are used by the town of
Minersville, have been established and determined as among
the plaintiffs and as among the parties to the action in which
such decrees were made, by judgments and decrees, made
and entered in the district court, in various actions therein
pending, before the commencement of the Hardy action.

The Hardy action was commenced in the year 1916, in the
district court of Beaver county, Utah. It was brought to
determine and quiet the rights to the use of the waters of
the Beaver river at and below the dam. The subject-matter
of the litigation was the storage rights in the reservoir and
the rights of the appropriators on the lower part of the
stream. The issues in that action presented questions in
dispute as to the use of the waters diverted from said river
below the dam only, and did not in any way involve any of
the rights to the use of the waters of the system belonging
to the plaintiffs in this action, or any of them; and none of
these plaintiffs were, prior to the date of the order herein
complained of, parties litigant in that case. A decree was

entered in the Hardy action in 1918. Thereafter the case was appealed to this court, where the trial court was reversed, the findings of fact and conclusions of law set aside, and the cause remanded for a new trial. The case is reported in 65 Utah, 28, 234 P. 524. Remittitur was filed on April 22, 1925. On December 28, 1925, after the remittitur had been filed in the district court, that court, through Judge Burton, the defendant herein, made and entered in said action an order directing the clerk of the court to notify the state engineer of the pendency of the action, and directing the state engineer to proceed in accordance with the provisions of the law aforesaid which, in the meantime, had come in effect, and thereby determined to proceed in said case as in said law provided to make a general determination of all of the rights to the use of the waters of the Beaver river system. That order and determination were made and based upon a motion which was made by the defendants in that action requesting the same, to which motion the plaintiffs therein objected. The plaintiffs in this action, however, not being parties to the case at that time, took no part in such proceedings.

These plaintiffs object to being brought into that case as they have been or will be as a result of the aforesaid action on the part of the district court. They have no desire to litigate their own rights nor the rights of anyone else in the stream. So they applied by various petitions and motions to the district court for relief, asking the court, upon a reconsideration of the matter, to set aside its order of December 28, 1925, and protesting that the court had no jurisdiction to make said order or to proceed to a general determination. But the court, after hearing the plaintiffs, stood upon its previous determination and denied their motions and overruled their objections. As the plaintiffs have no adequate remedy at law if the trial court is without jurisdiction in the matter, they have brought their grievances to this court in a petition for a writ of prohibition which they filed here on May 13, 1927.

Since the aforesaid order was entered, the state engineer has proceeded with his surveys and investigations and has spent in and about that business a sum in excess of $4,000.

This court, upon the filing of the petition, issued an alternative writ, directed to the trial court, restraining further proceedings in the Hardy action under the law of 1919, and directing the defendant judge to appear and show cause why he should not be absolutely restrained and prohibited from any further proceedings in the matter. The defendant has filed a demurrer to the petition upon the ground that it does not state facts sufficient to justify the relief prayed for, and also an answer, under oath, with a prayer that the alternative writ be dismissed. As no material isue of fact is raised upon which it will be necessary to have a verdict or a finding, we shall proceed to dispose of the case upon the merits upon the basis of the facts about which there is no dispute.

It is also made to appear from the petition and answer that some time after the plaintiffs had been accorded at least two hearings in the district court in regard to their objections they were permitted to appear again and showed the court that there had been a series of transactions take place among some of the original parties to the Hardy action which changed their relationship in respect to their water rights. The record is not clear as to just when it was that these transactions occurred, but it was perhaps some time in the early part of the present year. The facts are that the Duluth Land Company, a corporation, became possessed of the Beaver Bottom rights claimed by the original plaintiffs in the action; the Beaver River Irrigation Company, one of the defendants, succeeded to the rights of the Delta Land & Water Company, another defendant; and the Rocky Ford Irrigation Company succeeded to a large part, if not all, of the rights of the Beaver County Irrigation Company. So that the Rocky Ford Irrigation Company now represents the rights claimed by the original defendants in the action

and the Duluth Land Company owns those formerly held by the plaintiffs. These corporations are separate and distinct and do not have common stockholders, but the Duluth Land Company is a stockholder, possibly a controlling stockholder, in the Rocky Ford Irrigation Company.

Those sections of chapter 67, Laws Utah 1919, which relate to the subject-matter under inquiry, as is pointed out by Mr. Chief Justice Thurman in the case of *Smith* v. *District Court,* not yet officially reported, but found in 256 P. 539, present a comprehensive plan for the determination of water rights in river systems and other sources in this state. "The form of action," he says, "was evidently intended to apply where many persons claim rights to the use of water from such sources of supply. One of the purposes of the statute was to prevent piecemeal litigation in the determination of water rights and determine them all in one action. Such is the only effectual method of determining them in order to prevent a multiplicity of actions in which the same party is oftentimes compelled to try his rights over and over again until all persons claiming rights are made parties to the action. Another purpose of the staute, evidently, was to make a permanent record of such rights by decree of the court instead of permitting the evidence thereof to rest in parole. For these purposes the statute is in the highest sense remedial and will no doubt prove to be of great benefit to those persons who are owners of water rights in the systems to which that form of action applies." This court must construe and apply that statute so as to carry out the purpose and intention of the Legislature in passing it.

It will be observed by reference to sections 22 to 37, both inclusive, that the scope of the inquiry necessary to be made in the Hardy action as a result of the action of the trial court in the premises has been greatly extended, far beyond anything required by the issues raised in the pleadings in that case. New parties have been or will

be brought in, including the plaintiffs in this case and all others claiming rights in the system, and all of them will be required to set up their claims in the manner provided by the statute, under penalty of a forfeiture of their rights if they fail. A general outline of the form of action that the Hardy Case has now become is given in the Smith Case above cited. In short, from the usual suit in equity involving disputes as to water rights in which only appropriators on the lower part of the river were concerned it has been converted into a statutory proceeding for the determination of all of the rights to the use of the waters of the Beaver river system. It should be remembered that the familiar rules of practice and procedure by which the courts are guided in ordinary lawsuits do not apply in such cases where the Legislature has laid down other and different rules relative to a particular subject. If this principle is kept in mind, the legal conscience will tolerate some things that would otherwise upon first blush appear to be contrary to our accepted ideas as to how a lawsuit ought to be conducted and carried on.

It is provided in the statute that such a proceeding may be initiated in the following cases: (1) By the state engineer: (a) when five or more water users upon the system or source of supply file with him a verified petition requesting a determination of the relative rights of the various claimants, and he, upon investigation, finds that the facts and conditions are such as to justify it; (b) when twenty-five or more, or a majority of the water users on a stream, if there be fewer than twenty-five, so petition him. In either of the foregoing events it is made the duty of the state engineer to bring such proceeding in the district court (sections 20 and 21). (2) By the district court: (a) Whenever any civil action is commenced therein involving the use of water from a river system or other source and a general determination has not already been had (section 38) ; (b) in the case of a waste of water, upon a petition of any person or user of water from the river

system or source, made to the state engineer or to the court, or upon a report thereof to the court by the state engineer. In this case the court may make a general determination, if one has not already been made, or may make a redetermination in whole or in part (section 39). It is also provided in section 40 that a redetermination may be had in other circumstances under certain conditions. Section 38, which is the particular one relied upon by the defendant to justify his position in the matter, reads as follows:

"Whenever any civil action is commenced in the district court involving the use of water from any river system or water source, the court, in its discretion, may, if a general determination of the rights to the use of water from said river system or water source has not already been made, proceed, as in this act provided, to make such a general determination. In any action for the determination of water rights the state of Utah shall be joined as a necessary party."

Manifestly that section is a legislative grant of discretionary power to the district courts to do exactly what has been done in the Hardy action. It is a grant of power to the court to decide in any case of the nature therein mentioned whether or not a general determination of the water rights in the system or source involved is necessary or advisable and to proceed with such determination if the necessity or advisability therefor exists. It is a broad grant. The only limitations upon it are that the case in which such power is exercised must be a civil case; it must be commenced in the district court; it must involve the use of water in a river system or other source, and that a general determination of the rights in said system or source has not already been made. Nothing is said in that section, or elsewhere in the law, as to how the court's power may be invoked, or as to who may invoke it, in an action within the purview of section 38, or as to how the court is to be advised, whether by the pleadings in the case, or otherwise, in regard to the necessity or advisability for setting in motion the machinery to bring about a general

determination. We think it is sufficient, therefore, to bring about an exercise of the judicial power under this section, if some one interested in the case, or in the waters of the system or water source involved, or perhaps the state, acting through the state engineer, brings the matter to the attention of the court in some orderly manner and requests or moves the court to act thereon. Hence we see no reason why it may not be done either by direct allegations in the pleadings or by motion. It was done by motion in the Hardy action.

The Hardy action would seem to be precisely the sort of case that is contemplated by section 38. It involves the rights to use of the waters of a part of the river system. There are many rights upon the stream, both below and above the dam; there are storage rights of winter waters and of the run-off in the nonirrigation seasons. There are rights in that system that date back to early territorial days and rights, which counsel assure us in the briefs, have but recently been initiated by filings in the office of the state engineer. It is a civil action; it was commenced in the district court; and, as will be shown, there has been no general determination, within the proper meaning of that expression, of the waters of that river system. Why then should we not apply the law of that section to this case and hold that the district court acted in all respects within the jurisdiction thereby conferred and dismiss these proceedings? Plaintiffs say that we should not because the waters of that river system have already been determined by decree of the district court, and hence the waters of that system do not come within the terms of section 38. They base their conclusion upon the decrees which have been mentioned in the statement above which determine the rights of the users above the dam and of one of the lower appropriators. But this point is not well taken. The terms "general determination," as used in this section and elsewhere in the statute, as we understand them, without attempting an exact definition, connote a

determination of all rights within the system or other source existing at the time that the court is called upon to act or when the decree is made, and which is based upon the surveys and investigations made by the state engineer that are provided for in the statute, and made in an action conducted under and substantially in conformity with that law. There has been nothing like that done with respect to the waters of this river system. This law was not even in effect when the decrees were made and entered, upon which reliance is placed in this connection. The cases in which those decrees were entered were not prosecuted under this law, but according to the former practice in this state. None of them nor all of them together settle the rights of all of the water users in the system. We hold, therefore, that there has been no general determination of the rights to the use of the waters of the Beaver river system, so as to take the Hardy action outside of the provisions of section 38.

The plaintiffs also contend that, since their rights have all been heretofore established by court decrees, the only way under the law in which they can be again inquired into in an action of the kind in question is under section 39, in the case of an alleged waste of water or a failure to use the same in accordance with the rights so established; and, inasmuch as there has been no waste alleged as against these plaintiffs in the Hardy action, or any abuse of their decreed rights or any trespass by any of them as against any of the parties to that action, and no proceedings have been taken therein under section 39, therefore the court was and is without jurisdiction in the premises. They say the construction of the law in the case of *Eden Irrigation Co. et al.* v. *District Court et al.*, 61 Utah 103, 211 P. 957, and certain language emanating from this court in that case, support their position. This position, however, cannot be sustained for two reasons, namely: (1) Because there has not been, as we have already pointed out, a general determination of the rights in the

system involved. (2) Because the law is not susceptible to the construction which the plaintiffs would have us place upon it if this contention were sustained.

Section 39 reads as follows:

"Whenever any person or user of water from any river system or water source believes that there is a waste of water from said river system or water source, said person or user of water may report the matter to the state engineer or may petition the district court for the investigation of such alleged waste; whereupon the state engineer may make an investigation and report his findings to said court of such alleged waste or said court may order or make such an investigation, and if such investigation warrants may proceed to make a determination, if such has not yet been had, or a redetermination, in whole or in part, of the rights to the use of the water from said river system or water source."

This section cannot be said to be intended as a limitation upon the power conferred upon the district courts by section 38. But such would be the effect of our construction of it if we were to hold with the plaintiffs upon the point now under consideration. Instead, it is a grant of additional power, both to the state engineer and to the court, which may be used in the special circumstances therein mentioned; and it also provides a means whereby any person or water user upon the system may cause to be brought an investigation, and, if need be, a determination, of a supposed waste of water. The two sections are in no way antagonistic; they supplement each other. It is true that there has been no charge of a waste of water made against these plaintiffs or any of them in the Hardy action; and that the plaintiffs, having rights which have been established by decrees of the courts, cannot be required again to litigate their rights unless and until such a charge is made. But that is no reason why the court was without jurisdiction in that case. All that it shows is that the action of the court cannot be supported under section 39. But, as the power of the court is drawn from section 38, it is no cause for challenge to show that it can-

not be found in section 39. We do not wish to be understood as intimating by anything that is said in this connection, or by the holding in this case, that the matter of a supposed waste of water cannot be inquired into in an action initiated under section 38; for we think it can be. It would be according to the spirit and purpose of the statute for waste to be made a subject of inquiry in every general adjudication. To do this would injure no person in his rights, for no one can have a right to waste water, and it would aid in bringing about the largest possible beneficial use of the waters of the state. But of course there would have to be some pleading or allegation made by some one, of which an appropriator suspected of waste would be entitled to notice, before a water user could be required to come into court and defend his rights against such a charge. This is true whether his rights are established by decrees or not. That matter is all provided for, however, in the statute. The procedure upon a general determination, after it has been initiated, is the same whether the action be commenced under the one section or the other. In either case the state engineer makes his surveys, investigations, and reports any proposed determination; he distributes the waters until the final decree in the same manner, paying due regard to the rights which have been established by decrees. All persons claiming rights in the system, whether the same be decreed or not, are required to come in and file statements of their claims. The statements stand in the place of pleadings, and issues may be joined thereon. We see no reason why under such procedure the matter of waste of water, even though the right thereto be claimed under some decree of court, may not be drawn in question in a general determination which has been set in motion under section 38; for it might be discovered and reported to the court by the state engineer, or it might be alleged in the original pleadings filed in the case, or it might be made an issue by some claimant upon the statements which are filed. If the issue of waste is raised, the plaintiffs might properly be required

again to litigate their rights in the Hardy action; but if it is not raised they will not be required to do more than to file their statements as required by the law, so that their rights may be duly registered along with all others in the system and be thereby finally set at rest, at least so far as is is possible for water rights to be in peace. Such is the purport of Mr. Justice Frick's discussion of this matter in the Eden Case, supra; and there is nothing in that case which even bears upon the question of jurisdiction which we have to decide in this proceeding.

We therefore conclude that the district court was not without jurisdiction in the Hardy action because of the fact that it did not proceed under section 39 and that no waste had been charged as against these plaintiffs, all of whose rights have been established by court decrees, as shown by this record.

The next point relied upon by the plaintiffs is stated in the brief in the following language:

"The trial court has no arbitrary power, under the provisions of section 38 of said chapter 67, or under the provisions of any act of the Legislature of this state, to provide for a general adjudication of the use of waters of any river or river system."

In the reply brief, the matter is referred to again in this language:

"We did not mean to charge the trial court with any willful arbitrary action in this matter, but we do submit that the order for general adjudication is, under the law and the facts in this case, an arbitrary action."

If counsel means to say by this, and we suppose they do, that the court acted arbitrarily in the premises and hence beyond the limits of its lawful powers, using the word "arbitrarily in the sense of capriciously or without consideration of the matter, then the facts exhibited in this record do not bear out the assertion. It has

already been pointed out that the court first heard and considered a motion made by the defendants in the Hardy action for the order herein complained of, to which motion the plaintiff in that action objected. After the court had entered the order of December 28, 1925, these plaintiffs were permitted to come in twice with motions and objections calculated to stay the proceedings as to them; and they do not complain that they were not accorded every opportunity which they desired to make known to the court and to present the grounds and reasons for their opposition. So it appears that the trial judge gave consideration at least three times to the matter of whether or not there ought to be a general determination, and, so far as we know, upon each occasion heard everything anybody had to say upon the subject. Assuredly this record does not exhibit an exercise of arbitrary power, nor the exercise of a lawful power in an arbitrary or capricious manner. It shows the exercise of a discretionary power after much consideration. To be sure the court may have erred in its judgment in the matter. But that is something which we cannot inquire into in this proceeding. *Joseph Nelson Plumbing & Heating Supply Corp.* v. *McCrea, District Judge, et al.,* 64 Utah 484, 231 P. 823; *Board of Home Missions, etc.,* v. *Maughan,* Judge, 35 Utah 516, 101 P. 584, 24 L. R. A. (N. S.) 874.

The fourth point is that the Hardy action is a moot action only; it represents no issues to be tried and is therefore not such an action as is contemplated by section 38. But it was not moot when the order of December 28, 1925, was entered, whatever may be said as to its status in this respect at the present time. The transactions which it is claimed render the case moot occurred long after the order had been entered and after much of the work had been done by the state engineer upon the surveys and investigations required by the law in such cases. So this argument can have no application to the power of the court to make the order. Moreover since the nature of

the proceeding has been entirely changed from its original form and the case has become a statutory action involving all water rights in the river system, the original rights are still before the court and will be determined, adjudicated, and registered, even though many if not all of the issues raised in the pleadings in the first instance may have been compromised, or become moot by reason of some action taken by the parties. If the court had the lawful power in the first instance to inaugurate the proceedings for a general determination it would in our judgment be unreasonable to hold that the power to continue the undertaking to its completion has been taken away by reason of the facts that some of the original parties to the action have sold or conveyed their rights to others and that issues formerly raised in the pleadings may not have to be tried out. The jurisdiction or power of the court in these statutory proceedings for the determination and registration of water rights does not rest upon such considerations. Hence we conclude that the plaintiffs' fourth point is not valid.

The final proposition is that the Hardy action was remitted to the trial court with directions to that court to proceed in hearing proof upon a limited issue only raised by the pleadings in the action, namely, the use of winter water on the Beaver Bottom Lands, so that said court was limited in receiving proof upon that issue and therefore it is not such an action as comes within the purview of section 38.

The argument in this connection, we think, is based upon a misconception as to the result or effect of the holding in the Hardy action. It is quite clear, at least to the writer's mind, from a reading of the opinion filed in that case, that the findings of fact, the conclusions of law, and the decree made and entered by the trial court were set aside and that the case was remanded for a new trial. True it is that the court was directed to hear additional evidence upon the limited issue mentioned in the opinion. But, after

hearing such evidence, the court would then be under the necessity of making new findings and new conclusions and a new decree, upon the basis of the evidence introduced at the first trial supplemented by such additional evidence, and of the law as declared by this court. The case was pending when the order for a general determination was made, in the sense that it had not been decided or disposed of; there was still some evidence to be heard, and the findings of fact, conclusions of law, and decree were to be made and entered. We think that the case notwithstanding this situation, still came within the purview of section 38.

There is one other matter which we mention— and that with some reluctance because it does not seem to have any bearing whatever upon the merits of the jurisdictional question which must be decided in this case—only because it received a good deal of attention in the oral argument and occupies a large amount of space in the briefs. It is in relation to what was said by this court in the Hardy action about the law of 1919, as it might be applied to that case. This court in remanding the case took occasion to suggest to the parties thereto that a disinterested hydrographic survey of the respondents' lands and irrigation systems, made by the state engineer, along the lines provided for in the statute, would eliminate many of the uncertainties which were inherent in the record then before the court and partly on account of which the case was reversed, and would furnish a scientific guide for the trial court in determining both the extent of respondents' several requirements and the improvements which it would be necessary for them to make in their irrigation systems in order to apply the water in a reasonably efficient manner. But this court did not direct that such survey should be made; the matter was expressly put out only by way of suggestion to the parties. Much less did the court direct or even suggest that a general determination be made of all of the water rights in the river system involved. So if the trial court made the order in question because the

judge thought he had been directed to do so by this court or if he was influenced thereto in large measure by a misapprehension of what is said by this court upon the subject in the opinion in the Hardy action, and not by reason of other matters which he might properly consider when called upon to exercise the discretionary power which the law has vested in the court, then we would not hesitate to say that he committed a grievous error. But this is something which could not be corrected by this court in this proceeding, because we cannot review his actions, but can only look into the question of his jurisdiction.

We have thus disposed of every point made by the plaintiffs in this case against the jurisdiction of the district court. Inasmuch as they have pointed out no substantial reason why the court was not strictly within the limits of its lawful powers in the premises, and we discover none ourselves, we hold that the district court, when it made and entered the order of December 28, 1925, providing for a general determination of the rights to the use of waters from the Beaver river system, acted within the limits of the powers vested in that court by the provisions of section 38, c. 67, Session Laws of Utah 1919, and that nothing which has occurred since that time in the Hardy action so far as the record shows, has deprived the court of its jurisdiction to proceed with such general determination in the manner provided by the statute.

It follows that the alternative writ of prohibition heretofore issued and served in this case should be, and the same is, quashed, and the proceedings dismissed; plaintiffs to pay the costs. It is so ordered.

CHERRY, HANSEN, and GIDEON, JJ., and KIMBALL, District Judge, concur.

THURMAN, C. J., and STRAUP, J., did not participate herein; both being disqualified.