2003 UT 49

**UNITED STATES FUEL COMPANY and ANR Co., Inc., Plaintiffs and Appellees,**

**Intermountain Power Agency, Plaintiff–in–Intervention and Appellee,**

v.

**HUNTINGTON–CLEVELAND IRRIGATION COMPANY, Defendant and Appellant.**

No. 20010815.

Supreme Court of Utah.

Nov. 7, 2003.

---

Denise A. Dragoo, Bradley R. Cahoon, Ronald L. Rencher, Mark W. Dykes, Salt Lake City, for plaintiffs.

J. Craig Smith, David B. Hartvigsen, Scott M. Ellsworth, Salt Lake City, for defendant.

DURHAM, Chief Justice:

¶ 1 Defendant Huntington–Cleveland Irrigation Company (HCIC) appeals the trial court's ruling in favor of plaintiffs United States Fuel Company and ANR Co., Inc. and

intervenor Intermountain Power Agency and their predecessors-in-interest (collectively USF). This appeal involves an action to quiet title to a prior right to use water from Cedar Creek, a small stream that is part of the San Rafael Drainage in Emery County, Utah. This dispute arose because both USF and HCIC divert water from Cedar Creek.

### FACTS

¶ 2 HCIC is a mutual water company that was formed in 1932 through the merger of several irrigation companies, including the Cleveland Canal and Agriculture Company (CCAC). The founders of CCAC constructed the Cleveland Canal from Huntington Creek at the mouth of Huntington Canyon to the town of Cleveland. The Cleveland Canal crosses Cedar Creek, a tributary of Huntington Creek, as it proceeds east toward the Cleveland area. Because Cedar Creek tended to have large Spring run-off flows that would wash out the canals, HCIC eventually constructed a cement flume across the Cleveland Canal to carry the flood waters safely over the canal. The flume, or "flood bridge" as it is commonly called, has an opening in the center that will allow up to 10 cubic feet per second (cfs) of water from Cedar Creek to drop into the canal.

¶ 3 In the 1950s, a general adjudication of the San Rafael River and all of the smaller tributaries that feed into the San Rafael River was initiated by the state engineer. In 1970, HCIC filed a "Water User's Claim Statement" (WUCS) in the general adjudication, claiming the right to 10.0 cfs from Cedar Creek (Diligence Claim No. 93–1134). USF did not protest HCIC's claim. In the state engineer's Proposed Determination, issued on December 1, 1982, HCIC's claim of 10.0 cfs was recognized as the senior irrigation right on Cedar Creek and was designated WUC No. 93–1134.

¶ 4 USF's agent, Robert Eccli (Eccli), was served a copy of the proposed determination one year after it was issued, on December 2, 1983. Eccli signed a receipt and consent form, in which USF specifically consent to the entry of a final decree as set forth in the Proposed Determination unless it filed an objection thereto within ninety days of re-

ceipt, as required by statute. Utah Code Ann. § 73–4–11 (1989). USF mailed an objection to the court on March 2, 1984, ninety-one days later. USF's objection listed several water rights which it claimed had been omitted, and also claimed that the Proposed Determination listed "rights of junior appropriators, such as the Bureau of Land Management, that are adverse to its senior rights." In 1989, HCIC issued a letter to USF and its lessee demanding that USF release the first 10.0 cfs in Cedar Creek for HCIC's use.

¶ 5 USF initiated this action in June 1992. The complaint, as subsequently amended, sought to quiet title to certain water rights, to adversely possess and/or effect the forfeiture of any water rights of HCIC in Cedar Creek, and to prevent HCIC from interfering with USF's use of the water. HCIC counterclaimed, asking the trial court to adjudicate its water right as the senior right, declare USF's rights abandoned and/or forfeited, and enjoin USF from trespassing against and converting water belonging to HCIC.

¶ 6 In 1993, HCIC filed a motion to dismiss the matter or stay the proceedings pending the outcome of the general adjudication of the San Rafael Drainage. The motion was denied. Later that year, HCIC petitioned the trial court to hear the matter heard as a "mini-adjudication" of the Cedar Creek Drainage under section 73–4–24. Utah Code Ann. § 73–4–24 (1989). That petition was also denied.

¶ 7 On February 7, 1997, HCIC filed a pretrial motion seeking to bar any objections to the validity of its diligence claim for 10.0 cfs of water in Cedar Creek, based on the recent discovery that USF's objection to the Proposed Determination had been filed after the end of the ninety-day statutory objection period. The motion was denied.

¶ 8 Following a bench trial and various post-trial motions, the court issued its final findings of fact, conclusions of law, and the judgment on September 10, 2001. The trial court found that it had jurisdiction to determine the respective rights of the parties, including, without limitation, issues of priority, estoppel, adverse use, forfeiture, and

abandonment, even though these issues could also have been raised in the General Adjudication proceedings. The court also found that neither Utah Code sections 73–4–11 to –15 nor 73–4–24 precluded the court from exercising jurisdiction over the disputed claims. The trial court held that evidence adduced at trial demonstrated that USF, not HCIC, held priority to various water rights on Cedar Creek. In so holding, the trial court disregarded the state engineer's proposed determination, which gave senior priority to HCIC for 10.0 cfs from Cedar Creek.

### STANDARD OF REVIEW

■ ¶ 9 A trial court's determination of the law is reviewed under a correctness standard; we afford no degree of deference to a trial judge's determination of the law. *See Jeffs v. Stubbs,* 970 P.2d 1234, 1244 (Utah 1998). A trial court's findings of fact will be upheld unless they are clearly erroneous. *Young v. Young,* 1999 UT 38, ¶—15, 979 P.2d 338. Although legal questions are reviewed for correctness, we "may still grant a trial court discretion in its application of the law to a given fact situation." *Jeffs,* 970 P.2d at 1244. We decide how much discretion to give a trial court in applying the law to a particular area by considering a number of factors "pertinent to the relative expertise of appellate and trial courts in addressing those issues." *Id.* (citing *State v. Pena,* 869 P.2d 932, 938–39 (Utah 1994)). Finally, "a trial court is accorded considerable latitude and discretion in applying and formulating an equitable remedy," and will not be overturned unless it abused its discretion. *Thurston v. Box Elder County,* 892 P.2d 1034, 1041 (Utah Ct.App.1995) (citing *LHIW, Inc. v. DeLorean,* 753 P.2d 961, 963 (Utah 1988); *Morris v. Sykes,* 624 P.2d 681, 684 (Utah 1981)).

### ANALYSIS

¶ 10 On appeal, HCIC argues that the trial court erred in ruling that: (1) it had authority to exercise jurisdiction over this matter; (2) USF was not barred by waiver, estoppel, and/or laches from asserting a priority date senior to that of HCIC; (3) HCIC was barred by estoppel from submitting any evidence that water from the Mohrland Portal of the Blackhawk Mine is tributary to Cedar Creek; and (4) USF's water rights had not been forfeited. Because we reverse the trial court's holding that it had authority to adjudicate the private claims in this action, we need not address HCIC's remaining claims.

### I. JURISDICTION

■ ¶ 11 HCIC argues that the trial court erred in allowing USF to challenge and overcome the first priority of HCIC to the waters of Cedar Creek. HCIC alleges that USF violated Utah Code section 73–4–11 when it filed its objection to the San Rafael Proposed Determination after the ninety-day statutory period had expired. According to HCIC, the trial court has allowed USF to accomplish an "end-run" around the general adjudication procedures by accepting USF's independent action for relief outside of the pending general adjudication. USF counters by arguing that section 73–4–11 is permissive, not mandatory.

¶ 12 While USF is correct that section 73–4–11 is permissive, USF fails to recognize that section 73–4–12 requires the court to enter judgment consistent with uncontested elements of a proposed determination. This mandate cannot coexist with the prosecution of an independent action which could result in a judgment inconsistent with an uncontested portion of a proposed determination. We therefore reverse the trial court's holding.

¶ 13 Section 73–4–11 of the Utah Code states in pertinent part as follows:

> After full consideration of the statements of claims ... the state engineer shall formulate a report and a proposed determination of all rights to the use of the water ..., and a copy of the same shall be mailed by regular mail to each claimant with notice that any claimant dissatisfied therewith may *within ninety days of such mailing file with the clerk of the district court a written objection thereto* ....

Utah Code Ann. § 73–4–11 (1989) (emphasis added). Section 73–4–12 of the Utah Code describes the consequences of failing to lodge a timely objection, stating:

If no contest on the part of any claimant shall have been filed, *the court shall render a judgment in accordance with such proposed determination,* which shall determine and establish the rights of the several claimants to the use of the water ... and such other matters as will fully and completely define the rights of said claimants to the use of the water.

Utah Code Ann. § 73–4–12 (1989) (emphasis added).

▇▇▇ ¶ 14 Our legislature has entrusted to the state engineer the responsibility of sorting out competing claims to Utah's scarce water resources. *See Id.* §§ 73–4–1 to –24 (1989). When the proper allocation of water rights is in dispute, the state engineer can initiate a general adjudication of water rights by filing an action in district court to determine the various rights of water users. *Id.* § 73–4–1 (Supp.2002). After investigating the various claims, the state engineer submits a "proposed determination" of the parties' rights to the district court for its consideration in ruling on the general adjudication. *Id.* § 73–4–11. The state engineer has "special training in the operation and control of natural streams and irrigation and ... control of water and water rights," and is "especially qualified to understand the facts involved in these problems...." *East Bench Irrig. Co. v. State,* 5 Utah 2d 235, 300 P.2d 603, 606 (1956). However, the state engineer "is an executive, not a judicial officer." *Id.* Therefore, as a general rule, "[t]he determination of the priority of rights is a judicial function and not among the powers of the state engineer." *Whitmore v. Murray City,* 107 Utah 445, 154 P.2d 748, 750 (1944). While courts may consider the state engineer's determination persuasive in determining parties' respective rights, they are under no obligation to defer to his or her findings.

▇▇▇ ¶ 15 As noted above, the procedures governing review of a state engineer's proposed determination are "permissive" and not an impediment to independent "private" suits respecting ownership and priority of water rights. However, the uncontested proposed determination is an exception to the permissive nature of the statutory scheme. The clear mandate of section 73–4–12 is that courts must render judgment in accordance with a proposed determination where the proposed determination is uncontested at the close of the ninety-day statutory period. Utah Code Ann. § 73–4–12.

¶ 16 Fifty years ago, the district court entered an order requiring that all water rights within the San Rafael River Drainage, including Cedar Creek, be adjudicated pursuant to title 73, chapter 4 of the Utah Code. The entry of this order for a general adjudication set in motion procedures for giving notice to water claimants, the filing of statements by claimants, and a comprehensive and exhaustive investigation by the state engineer. The state engineer's findings were then compiled in a report and proposed determination. The state engineer's report on the San Rafael River Drainage, issued in December 1982, found HCIC's 10.0 cfs to be the senior irrigation right on Cedar Creek.

¶ 17 By the plain language of the statute, USF had ninety days from the date of service of the proposed determination to file an objection to the proposed award of water rights to HCIC. *Id.* § 73–4–11. USF filed an objection one day late. Its tardiness had consequences. Unless and until USF sought and obtained leave of court in the general adjudication to excuse its tardy objection, HCIC was entitled to judgment perfecting the state engineer's proposed award to HCIC of the 10.0 cfs irrigation right. *Id.* § 73–4–12.

▇▇▇ ¶ 18 To this day, USF has not sought to have its untimely objection accepted ·in the general adjudication. Therefore, that court remains under a statutory mandate to enter judgment perfecting HCIC's claim to the 10.0 cfs of irrigation water. We believe it is the obligation of a trial court confronted with a private suit seeking relief inconsistent with an uncontested proposed determination in a general adjudication to abstain from adjudicating the private claims. Although the language of Sections 73–4–11 and 73–4–12 requires abstention, this statutory mandate is a limited one. The general adjudication and objection process in sections 73–4–11 and –12 has never been the exclusive procedure by which water users may assert

their claims. *See Murdock v. Springville Mun. Corp.*, 878 P.2d 1147, 1150 (Utah 1994). Once an objection to a proposed determination of water rights has been properly filed in a general adjudication proceeding, the objecting party is at liberty to pursue separate adjudication of private claims.

¶ 19 This court determined long ago that the adoption of uncontested state engineers' proposed determinations by operation of law did not unconstitutionally confer adjudicative power on the state engineer. *Eden Irrig. Co. v. Dist. Court*, 61 Utah 103, 211 P. 957 at 960 (1922). *See also Huntsville Irrigation Ass'n v. District Court*, 72 Utah 431, 270 P. 1090, 1094 (1928) (affirming that the constitutional objections raised against the water rights determination statutes at issue in *Eden* were "without merit."). In *Eden*, we examined nearly identical language in the predecessor statutes to sections 73–4–11 and –12 of the Utah Code at issue here. We reasoned then that the fate of a water right claimant who fails to object to a proposed award was similar to that of a defaulting party in a lawsuit. "[I]f the claimant makes no objection, he, by his silence, . . . confesses the statements contained in the engineer's proposed determination of his water rights, and thus a judgment may legally be entered in accordance with the proposed determination of the engineer." *Eden Irrig. Co.*, 211 P. at 960. The *Eden* holding and reasoning have continuing force and offer sound guidance.

¶ 20 When USF failed to timely contest HCIC's claim to the 10.0 cfs of Cedar Creek water, it took on the status of a defaulting party in the general adjudication. Although no final judgment has been entered in the trial court, the statutory directive that "the court shall render a judgment in accordance with such proposed determination" vested in HCIC a right to obtain judgment, either by applying for the determination's entry or through an action sua sponte by the trial court. USF cannot defeat this right through collateral attack in a separate lawsuit. Only in rare instances do we permit collateral attacks on default judgments. Similarly, we should insulate from collateral assault a party who has acquired a statutory entitlement to a judgment. The general adjudication provided USF, and indeed all claimants in the San Rafael River drainage, a statutorily-mandated forum in which to contest competing claims. It is in that forum that USF should be compelled to seek relief for its untimely-filed objection to HCIC's claim.

¶ 21 In this action, just as in the general adjudication proceeding, the title to be quieted, the injunctive and declaratory relief granted, and the monetary damages awarded all must reflect HCIC's right to the entry of judgment based on the state engineer's proposed determination. Accordingly, we vacate the trial court's award of 10.0 cfs of water from Cedar Creek to USF and hold that the trial court should have abstained from adjudicating the private claims in this action where USF did not contest the proposed determination within the statutorily-mandated period.

## CONCLUSION

¶ 22 We vacate the holding of the trial court. The trial court erred in determining that it had jurisdiction to hear this quiet title action outside of the general adjudication proceedings. The trial court should have abstained from adjudicating the private claims in this case. While the state engineer is an executive officer and his or her findings are not binding on courts of law, Utah Code section 73–4–12 mandates that courts enter judgment in accordance with the proposed determination of the state engineer when the proposed determination has not been contested within the statutorily-mandated period.

¶ 23 Associate Chief Justice DURRANT, Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM's opinion.