**In re GREEN RIVER DRAINAGE AREA.**

**In the Matter of the General Determination of the Rights to the Use of All the Water, both Surface and Underground, Within the Drainage Area of the Green River Above the Confluence of Pot Creek, Including Pot Creek, in Daggett, Summit, and Uintah Counties, Utah.**

No. C–7–56.

United States District Court
D. Utah, Central Division.

Dec. 7, 1956.

———◆———

Walter Kiechel, Jr., Atty., Dept. of Justice, Washington, D. C., A. Pratt Kesler, U. S. Atty. for Dist. of Utah, Salt Lake City, Utah, for United States.

E. R. Callister, Atty. Gen. for State of Utah, Robert B. Porter, Asst. Atty. Gen. for State of Utah, for the State of Utah.

CHRISTENSON, District Judge.

An action for the "general determination" of certain water rights under state law was initiated by the petition of the State Engineer in the District Court of the Third Judicial District in and for Daggett County, State of Utah, pursuant to the provisions of Chapter 4, Title 73, Utah Code Annotated 1953. In accordance with procedure specified therein, the State Engineer also prepared and filed a statement of the names and addresses of all claimants to the waters involved as they were determinable from the records in his office. Listed, among others, were "United States of America, Bureau of Land Management", "United States of America, Forest Service", and "United States Department of Interior, Bureau of Reclamation", with addresses indicated. Thereafter, there was duly served upon the United States a summons entitled in the state court with the cause described as indicated in the above title. This summons required the United States to appear and defend said action and further stated:

"* * * Upon the service of this summons upon you, you will thereafter be subject to the jurisdiction of the above entitled court and it shall be your duty to follow further proceedings in the above entitled action and to protect your rights therein. The necessary surveys are being made by the State Engineer as required by law to collect data for use in preparing his report, recommendations and proposed determination. In accord with the provisions of Chapter 4 of Title 73, Utah Code Annotated, 1953, you are required to file with the State Engineer and with the Clerk of the above entitled court, within ninety (90) days after the service of this summons upon you, a written statement of water user's claim, under oath, setting forth the facts relating to your rights in and to the water of the Green River Drainage Area above described, a blank form for which is furnished herewith. If this summons is served by publication, a blank form will be provided by the Clerk of the District Court or the State Engineer upon request. Your failure to file your statement of claim within the time herein limited will constitute your default in the premises and a judgment may be entered against you declaring and adjudging that you have no right in or to the waters of the above described water sources and drainage area, except as your right is included as a stockholder in an incorporated irrigation company or as a resident within a municipality, and forever barring and estopping you from asserting any right or claim to the use of the said waters of the Green River."

Within twenty days from service of summons, the United States filed its petition for removal of the action to this court. A motion to remand has been interposed by Joseph M. Tracy, State Engineer of the State of Utah, on the grounds that the action is one for the adjudication of rights to the use of water; that there are approximately five hundred water users within the drainage area involved, none of whom joined in the Government's petition for removal; that the petition does not take into consideration Section 208(a) of the Department of Justice Appropriation Act, 1953 (sic) 43 U.S.C.A. § 666; and that the cause is not removable to this

court because it could not have been originally commenced herein.

Oral arguments and briefs have been submitted in which the State of Utah contends that the mere fact that the United States is a "party defendant" does not raise a federal question; that none of the special statutes conferring jurisdiction upon the United States district courts is applicable; that there is no federal question involved and that the federal statute by which the United States waived its immunity in such actions recognizes the continuing jurisdiction of the state court. The United States contends that this court is vested with jurisdiction by virtue of the federal questions raised in the Government's petition for removal; that in any event, the federal courts have original jurisdiction over all cases wherein the United States is a party defendant; that this court has jurisdiction under 28 U.S.C.A. § 1347, the proceedings being essentially one for the partition of real estate; that 43 U.S.C.A. § 666 does not grant exclusive jurisdiction to the state courts to determine the water rights of the United States; that if it purports to do so its constitutionality is questionable; that the State Engineer has not made any showing that the United States is a necessary party or is the owner of water rights under state law by sale, exchange, or otherwise, and that in these and other respects an interpretation of the federal statute waiving immunity from suit in such proceedings and other acts of Congress involve federal questions affording original jurisdiction to this court.

The Act of July 10, 1952, c. 651, Title 2, § 208, 66 Stat. 560, 43 U.S.C.A. § 666, provides:

"(a) Consent is given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit. The United States, when a party to any such suit, shall (1) be deemed to have waived any right to plead that the State laws are inapplicable or that the United States is not amendable thereto by reason of its sovereignty, and (2) shall be subject to the judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the same extent as a private individual under like circumstances: Provided, That no judgment for costs shall be entered against the United States in any such suit.

"(b) Summons or other process in any such suit shall be served upon the Attorney General or his designated representative.

"(c) Nothing in this section shall be construed as authorizing the joinder of the United States in any suit or controversy in the Supreme Court of the United States involving the right of States to the use of the water of any interstate stream."

Thus far, only a few reported cases have touched upon this statute. In State of California v. United States District Court, 9 Cir., 1954, 213 F.2d 818, its construction was not deemed called for in the denial of writs of certiorari, mandamus and prohibition. Rank v. (Krug) United States, D.C.S.D.Cal.N.D.1956, 142 F.Supp. 1 involved the same proceeding on the merits. This was an exceedingly extended and complicated case. Much in Judge Hall's opinion is instructive. But it does not purport to solve the basic problem raised here. Removal to the federal court was accomplished prior to the enactment of Section 666, in a class suit against Bureau of Reclamation officials to prevent interference with common rights to the flow of San Joaquin River alleging, inter alia, that the defendant officials were violating federal laws requiring recognition of state wa-

ter rights. This was held to present a "federal question" warranting removal by the defendant officials. No petition to remand was filed. It was after jurisdiction thus attached that the United States, as such, was made a party defendant by virtue of Section 666. Strangely enough, the Government there contended that the United States District Court had no jurisdiction over it, while it now premises its claim that the instant action is removable upon the theory that this court would have original jurisdiction of such proceedings because the United States is a party defendant.

Counsel for the Government have called attention to several unreported decisions which they assert support the Government's position. United States district courts for the districts of Oregon, Colorado, the Western District of Texas, and Nevada are said to have denied petitions to remand suits brought against the United States under Section 666. In only the Oregon case has a memorandum decision been filed. The conclusion there apparently was based upon the theory that Article III, Section 2 of the Constitution of the United States is self-executing as regards the jurisdiction of United States district courts. For reasons hereinafter noted, the position of the Government may not thus be supported. Whether the circumstances involved in the other cases mentioned, the points therein considered, or the rationale of the decisions would render them persuasive, does not appear. However, the nature of the original Texas litigation out of which grew Miller v. Jennings and the United States of America, relied upon by the Government, as that original litigation is reported on appeal in Hudspeth County Conservation & Reclamation Dist. No. 1 v. Robbins, 5 Cir., 1954, 213 F.2d 425, certiorari denied 348 U.S. 833, 75 S.Ct. 56, 99 L.Ed. 657, indicates that the Miller case probably is not in point. As a further indication of this, the original case did involve removal from the state court, a denial of a motion to remand, and a subsequent dismissal for want of jurisdiction, but

it was not one for the adjudication of water rights under Section 666. However, I have learned that the Miller case subsequently was filed directly in the United States District Court for the Western District of Texas and was later dismissed by the trial judge for lack of jurisdiction over the United States. While an appeal is now pending, I have no reason to suppose that it is closely in point. Possibly the case turns upon the different principle involved in Ogden River Water Users' Association v. Weber Basin Water Conservancy, 10 Cir., 1956, 238 F.2d 936.

It does not appear that the Court of Appeals of this circuit or the Supreme Court of the United States has construed Section 666. I have, therefore, felt called upon to explore de novo the questions presented, with something more than summary treatment. It has been found that resolution of preliminary issues leads step by step to a basic problem not only of importance in the western states where water is life's blood, but of significance generally. It involves an aspect of the juridical relationship between the federal government and the states, as that relationship was initially established, as it has been developed over the years by legislative policy and judicial decision, and as it now feels the impact —perhaps shock is the word—of a somewhat unique statute.

The United States as a sovereign is immune from suit unless it consents to be sued. In the latter event, the terms of the consent strictly define the Court's authority to entertain an action. United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058; Howard v. United States ex rel. Alexander, 10 Cir., 1942, 126 F.2d 667, certiorari denied 316 U.S. 699, 62 S.Ct. 1297, 86 L.Ed. 1768, rehearing denied 317 U.S. 705, 63 S.Ct. 25, 86 L.Ed. 563; United States v. District Court of Fourth Judicial Dist. in and for Utah County, 121 Utah 1, 238 P.2d 1132, rehearing denied 121 Utah 18, 242 P.2d 774; Ogden River Water Users' Association v. Weber Basin Water Conservancy, supra. For a reference to the

origin of this doctrine, see Keifer & Keifer v. Reconstruction Finance Corporation, 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784.

■ It cannot be doubted that the United States has consented to be sued as a defendant in suits for the adjudication of rights to the use of water of a river system or other source, or for the administration of such rights, where the United States claims ownership. 43 U.S.C.A. § 666, supra. The question left unanswered by the statute is in what court or courts such suits may be maintained.

■ It is well established that in waiving sovereign immunity, Congress may specify, and limit suit against the United States to, a certain court or courts. State of Minnesota v. United States, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235; Powell v. United States, 10 Cir., 1956, 233 F.2d 851; Howard v. United States ex rel. Alexander, supra. In the Powell case it is said, dicta, that the terms of the waiver determine the jurisdiction of a court to entertain an action against the United States.

■ But Congress, by the statute in question, has not conditioned the waiver of immunity upon the bringing of suit in a specified court, nor has it otherwise expressly designated the court or courts in which suit may be brought. General reference only is made to "the court having jurisdiction". It follows that this statute is one simply waiving the immunity of the United States from suit in the class of actions specified, and that, apart from this, it does not purport to be a grant of jurisdiction to any particular court or courts, state or federal.

■ Inquiry next should be made whether, aside from this resolved question of immunity, or in the light of any possible limitation to that waiver, the present proceeding is one of which the state district court had original jurisdiction. Indeed, the jurisdiction of the federal courts upon removal is in a limited sense a derivative jurisdiction, so that if the state court lacked jurisdiction of the subject matter, the federal court acquires none. State of Minnesota v. United States, supra. Clearly, the state court had jurisdiction not only over the "person" of the United States, since service of process was accomplished in accordance with the statute, but over the subject matter of the proceedings as well. The statute governing general determinations of water rights in Utah vests the state district courts with jurisdiction. Section 73–4–1 et seq., Utah Code Annotated 1953. Moreover, state district courts in Utah are courts of general jurisdiction. Section 78–3–4, Utah Code Annotated 1953; Brady v. McGonagle, 57 Utah 424, 195 P. 188. In the absence of express congressional provision to the contrary, a state court may exercise jurisdiction over a suit of a civil nature arising under the laws of the United States although the federal courts may not have been granted jurisdiction in the particular case. Christner v. Poudre Valley Cooperative Association, 10 Cir., 1956, 235 F.2d 946.

■ The Government cites State Tax Commission v. Kennecott Copper Corporation, 10 Cir., 1945, 150 F.2d 905, affirmed 327 U.S. 573, 66 S.Ct. 745, 90 L.Ed. 862, and on the doctrine of that case contends that the waiver of immunity contained in Section 666 operates only as to water adjudication suits brought in federal courts. The right of a state to reserve for its courts the primary consideration and decision of its own tax litigation because of the direct impact of such litigation upon its financing, Kennecott indicates, requires a clear declaration of a state's consent to suit against itself in the federal court on fiscal claims. The qualifications of that principle, the differences between the facts of that decision and the present case, the modern liberal view toward waivers of sovereign immunity by Congress, congressional policy of conformance with state laws concerning federal water rights, the inherent nature of water adjudication suits, the legislative history of Section 666 and its obvious purpose, the very terms of the section, and the

limited jurisdiction of federal courts, combine to make manifest the clear intent of Congress that the waiver of immunity under Section 666 operates in suits brought in state courts. This becomes additionally clear from considerations discussed hereafter under other points, but it seems enough here to note the conclusion that the Kennecott doctrine has no application. Nor does State of Minnesota v. United States, supra, contain anything precluding the jurisdiction of the state courts where the authority is thus clearly provided by Congress.

 Next must be considered whether Section 666 contemplates an action for the "general determination of water rights" such as this one. The administrative procedure in the office of the State Engineer, with the filing of his petition in the state district court and the issuance of process therefrom merged into a suit. Cohens v. Commonwealth of Virginia, 6 Wheat. 264, 5 L.Ed. 257; see also Rank v. (Krug) United States, supra. A general determination suit is a judicial and not merely an administrative proceeding. Eden Irr. Co. v. District Court of Weber County, 61 Utah 103, 211 P. 957. The federal courts should accept the view of the highest state court in construing the state statute with regard to such question. Pacific Live Stock Company v. Lewis, 241 U.S. 440, 36 S.Ct. 637, 60 L.Ed. 1084. The United States has been joined as a "defendant" within the purview of the federal statute notwithstanding that there is no nominal plaintiff. It did not initiate the action as moving party; it has been called upon by due process to answer under penalty of having its right foreclosed by default, and it here relies upon its status as a defendant as the basis of its claimed right of removal. It is not meant to say that the United States must be considered a defendant for all purposes, and this point will be referred to hereinafter. Nonetheless, in considering the right to initiate this proceedings against the United States in the state court under Section 666, it

sufficiently appears from the papers filed and other matters of which the Court may take judicial notice, that it is a suit "for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights * * * (and) that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise and * * * is a necessary party to such suit."

 If I am mistaken on this latter point—if as the Government argues, it is not adequately shown that the United States claims as owner or that it was a necessary party to the state proceeding, this would be no reason to retain the suit anyway, for the right to removal would also be refuted. Even though it were true that the United States has not yet been made a "defendant" as contemplated by the statute because under the Utah law its claim may be deemed the initial pleading as far as it is concerned, the result is still the same, for then the Government's petition would have been premature.

 Now as to the right of removal, assuming that the Government's petition for removal was not premature: In the absence of language requiring a different result, permission to sue the United States in " 'any court of competent jurisdiction, State or Federal' " is generally held not to preclude the right of removal from a state court if there is some independent ground therefor. Sarner v. Mason, 3 Cir., 1955, 228 F.2d 176, 178; Clifton Park Manor, Section One, Inc. v. Mason, D.C.D.Del.1955, 137 F. Supp. 326; James River Apartments, Inc. v. Federal Housing Administration, D.C.D.Md.1955, 136 F.Supp. 24. Thus, Section 666 on its face does not purport to foreclose removal of water adjudication suits in which the United States is made a party if such action would be otherwise removable. If that right exists as to water adjudication suits in general the peculiar nature of the present proceedings should not operate to destroy it.

True, statutory general determination proceedings require close cooperation between state administrative officials and the court, their course is usually long and difficult and their prosecution in the federal courts would be beset with many problems in adapting the state statutory plan to federal procedures. Such considerations may be important on questions involving discretion but are not conclusive on issues of jurisdiction or right.[1] The proceeding prior to removal, unlike Pacific Live Stock Company v. Lewis, supra, had become a justiciable cause and had left the purely administrative phase. Recourse to a federal court in a proper case does not necessarily depend upon varying forms of remedy when their substance is the same. In re Water Right of Utah Const. Co., D.C.D.Idaho E.D. 1929, 30 F.2d 436; Kirby v. Chicago & N. W. R. Co., C.C.S.D.Iowa C.D.1900, 106 F. 551; Harr v. Pioneer Mechanical Corporation, D.C.S.D.N.Y.1932, 1 F.Supp. 294.

Section 666 does not expressly recognize the right of removal by the United States. Does it by implication do so, or, on the other hand, does it so negative that right? Or is it ambiguous? On its face, the Act is a mere waiver-of-immunity statute, leaving the question of original jurisdiction and right of removal exactly where it found them, apart from the question of the Government's suability. If there is no ambiguity on this point or if its terms do not lead to

unreasonable or absurd results, recourse to legislative history is unnecessary. United States v. Missouri Pac. R. Co., 278 U.S. 269, 49 S.Ct. 133, 73 L.Ed. 322. However, if the Act is ambiguous either in its terms or in its implications, its legislative history properly may be looked to, especially in confirmation of its apparent meaning. United States v. Great Northern Ry. Co., 287 U.S. 144, 53 S.Ct. 28, 77 L.Ed. 223. As in Mastro Plastics Corp. v. N. L. R. B., 350 U.S. 270, 76 S. Ct. 349, 100 L.Ed. 309, while relevant legislative history may provide no conclusive answer to the problem of interpretation, it will be of interest to observe whether it is consistent with the conclusions here reached.

Senate Bill 18, 82nd Congress, First Session, upon which Section 666 is based, originally contained the provision that "the United States shall have the right of removal to the federal court of any such suit in which it is a party." Mr. William H. Veeder, representing the Attorney General of the United States, while voicing more basic objections to the bill before a subcommittee of the Committee on the Judiciary of the United States Senate, did raise the point that the right of removal would establish two confusing systems of administration. The chairman of the subcommittee, apparently interpreting Mr. Veeder's comments on removability as an objection, indicated that he would be agreeable to an amendment striking it out.[2] There-

---

1. See Tenth Circuit case, In the Matter of the Workmen's Compensation of Feliberto Fresquez v. Farnsworth & Chambers Co., Inc., 1956, 238 F.2d 709.

2. Mr. Veeder: "The first point that I have here is that under this bill, if this bill were enacted, the United States could be named a defendant with the right to remove the case to the Federal court for adjudication, if that were to occur, we would in effect have two methods of adjudicating rights. We would have the situation where the Federal court was adjudicating rights, and superseding in effect the State procedure which is in existence. We have always been able to work out a method where we were not in conflict with the State. * * * But

if this legislation as now written is enacted, you will have two procedures in existence in the State, and it would be a serious detriment to the small water user here if he were to sue the United States and we were to remove over here to the city and county of Denver, and he would have to come across the mountain to protect his rights. I don't think that is desirable at all. In those instances, he can usually get complete relief there. * * * *"

Senator Watkins: "If it brought you in the Federal court, I would agree with you and say let them go in the State courts. If you are going in the State and file applications and take advantage of the State laws and whatever benefits come from it, then why shouldn't you

after, Veeder's objections to the bill were directed to the idea of waiver of immunity rather than to the question of removability or non-removability; and, realistically, it appears that his observations on the latter subject were more in the nature of a contention that sovereign immunity should not be waived at all.

On the other hand, a representative of the National Reclamation Association objected strongly to the idea of removability.[3] Finally, the Committee on the Judiciary recommended a bill in substantially the form in which it was later adopted, omitting any reference to the right of removal. Its reports contained no comment on the question of removability.[4] The pertinent changes thereby made from the original draft were the elimination of the provision expressly reserving the right of removal and the addition of the phrase that in the type of suits mentioned the United States "shall be subject to the judgments, orders, and decrees of *the court having jurisdiction* to the same extent *as a private individual under like circumstances.*" (Emphasis added.)

Any inference which otherwise might be drawn from the elimination of the reference to removal and the mention of the status of an "individual" may be partly dissipated by the use of the language "the court having jurisdiction". If it were intended that the state courts should have exclusive jurisdiction in such matters at all events it would have been simple to have so indicated. If in line with the suggestion of the National Reclamation Association it were intended to make impossible the removal of such suits initiated in state courts to federal courts in every case, other more apt language was readily available.[5] It must be recognized that the provision for removability contained in the original bill was at hand if it had been intended by Congress that water adjudication suits brought against the United States under Section 666 should be subject to removal merely because the United States was a party. The elimination of the reference to removal is consistent with the idea that all such actions would not first have to be filed in state courts, but that federal courts might entertain original

go into State courts for adjudication? I would be willing to amend by striking that out. I personally do not like that."

*Hearings of Subcommittee on the Judiciary, United States Senate on Senate Bill 18, pp. 5, 7.*

3. Statement by Glenn G. Saunders, Attorney at Law, Member National Reclamation Association, Denver, Colorado:

"* * * Millions of dollars of water projects have been developed and an entire civilization has been built up in the West based upon the sanctity of water rights set at rest by decisions of State courts. It is the position of the United States Department of Justice that if the settled water rights adjudicated by the States in their own courts cannot be readjudicated in Federal courts that the jurisdiction of the United States is restricted and embarrassed. (Reply of the United States of America to Memorandum Brief of City and County of Denver, case No. 2782, District Court for Colorado, p. 4, note 7.)

"This means that wherever the United States becomes the proprietor of a water right in the western United States,

all of the supposedly settled water rights are subject to review and reexamination in a court of the United States even though the validity of all the water rights in the area may have been theretofore fully determined by action of a state court. Such an upheaval may occur at any time that the United States appears in a watershed, either as an appropriator or as a purchaser of a water right, under the present state of the law."

"Therefore, we submit that S. 18, while a step in the right direction, ought to go still further and eliminate any provisions for removal of such suit to the Federal courts. * * *"

Ibid, p. 22.

4. Report No. 755 on S.Bill 18, 82nd Cong., 1st Session, "Authorizing Suits Against the United States to Adjudicate and Administer Water Rights," Sept. 13, 1951; also Report No. 733, Part 2, on S.Bill 18, supra, 2nd Session, April 2, 1952.

5. For example, the Securities Act of 1933, 15 U.S.C.A. § 77v, provides that "No case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States."

**138**

jurisdiction should this be otherwise authorized by law. The reference to individual status may have intended the subjection of the United States to suits and judgments of those courts having jurisdiction, state or federal, as complete as it would be if the United States were an individual. It would not necessarily mean that for other purposes the United States was to be entirely divested of its character so that rights under other laws applicable to the United States would not be available to it. See Stanley v. Schwalby, 162 U.S. 255, 16 S.Ct. 754, 40 L.Ed. 960.

 It is concluded from the language of Section 666 standing alone, and also in connection with its legislative history, that Congress did not intend to foreclose the jurisdiction of the federal courts, either in the first instance or by way of removal, over suits in which the United States was a party defendant, or a party plaintiff, where such jurisdiction would exist under other federal laws, sovereignty being waived. It also clearly appears from both viewpoints that it was not contemplated that the right of removal would exist without reference to existing law merely because the United States was made a party to a water adjudication suit by virtue of Section 666.

It becomes necessary, accordingly, to determine in view of existing law under what circumstances cases of this nature are removable from the courts of a state where the United States is properly a party defendant. With respect to right of removal in general, 28 U.S.C.A. § 1441 provides:

"(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

"(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

"(c) Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction."

This proceeding, therefore, is removable if the district courts of the United States would have had original jurisdiction of it, providing that the right to removal has been properly invoked.

 This type of proceeding is not within the original jurisdiction of United States district courts over cases involving foreclosure of liens even though partaking of the nature of suits to quiet title. Shinaberry v. United States, D.C.W.D.Mich.S.D.1956, 142 F.Supp. 413; Gerth v. United States, D.C.S.D.Cal.1955, 132 F.Supp. 894; Tri-State Insurance Company v. United States, D.C.W.D. Okla.1955, 129 F.Supp. 115; 28 U.S.C.A. § 2410(a).

 Nor can it be entertained as a proceeding for a declaratory judgment in the absence of some independent basis of jurisdiction. United States v. State of West Virginia, 295 U.S. 463, 475, 55 S. Ct. 789, 793, 79 L.Ed. 1546; McCarty v. Hollis, 10 Cir., 1941, 120 F.2d 540; 28 U.S.C.A. § 2201.

 It is also my opinion that a suit adjudicating water rights does not fall within the purview of the statute, 28 U.S. C.A. § 1347, providing:

"The district courts shall have original jurisdiction of any civil action commenced by any tenant in common or joint tenant for the partition of lands where the United States is one of the tenants in common or joint tenants."

On this point further reference should be made to the nature of suits for the general determination of water rights under Utah law. Section 73–4–1, Utah Code Annotated 1953, provides:

"Upon a verified petition to the state engineer, signed by five or more or a majority of water users upon any stream or water source, requesting the investigation of the relative rights of the various claimants to the waters of such stream or water source, it shall be the duty of the state engineer, if upon such investigation he finds the facts and conditions are such as to justify a determination of said rights, to file in the district court an action to determine the various rights. In any suit involving water rights the court may order an investigation and survey by the state engineer of all the water rights on the source or system involved."

Upon a related subject, Section 73–4–18, Utah Code Annotated 1953, provides:

"Whenever any civil action is commenced in the district court involving fewer than 10 water claimants or less than the major part of the rights to the use of water from any river system, lake, underground water basin, or other source, the court in its discretion, may, if a general determination of the rights to the use of water from said water source has not already been made, proceed, as in this chapter provided, to make such a general determination. In any such action for the determination of water rights the state of Utah shall be joined as a necessary party."

■ The procedure in statutory suits for the determination of water

rights in Utah, whether initiated under one or the other of the foregoing sections, is set out in Section 73–4–3 et seq., Utah Code Annotated 1953. The nature of the proceedings is suggested in the form of summons quoted at the beginning of this opinion, and I shall not attempt here to further detail them. It should be noted that in such a general determination suit the rights to the use of water may be determined not only as between and among the claimants and users on one side and the State of Utah on the other, but also as between and among all the claimants and users thereof. Huntsville Irr. Ass'n v. District Court of Weber County, 72 Utah 431, 270 P. 1090.

■ Under the modern Utah law of partition, the rights of each party, plaintiff as well as defendant, may be determined, including the rights of unknown parties when jurisdiction in rem has been acquired by publication of summons, 78–39–8, Utah Code Annotated 1953; while partition must involve real property, water rights in Utah are treated as, and are deemed to be, real estate. Hammond v. Johnson, 94 Utah 20, 66 P.2d 894; 73–1–10, Ibid.

■ In spite of these modern similarities, and not unmindful of the contrary decision in North Side Canal Co., Limited v. Twin Falls Canal Co., D. C.Idaho S.D.1926, 12 F.2d 311, I am of the opinion that suits for the general determination of water rights are more in the nature of suits to quiet title. When the federal statute was adopted, disputes with reference to title such as are assumed in both general determination suits and private suits to quiet title to water rights could not be adjudicated in partition suits. State statutes are ineffectual to confer jurisdiction on federal courts and the scope of partition suits in the federal courts is no broader than was their scope in the High Court of Chancery wherein partition never dealt with controverted title. Rambo v. United States, 5 Cir., 1944, 145 F.2d 670, certiorari denied 324 U.S. 848, 65 S.Ct. 685, 89 L.Ed. 1408; Jones v. United

States, D.C.E.D.N.C. New Bern D.1954, 127 F.Supp. 31. Moreover, partition suits properly involve joint or common interests in specific real property where all of the tenants in common or joint tenants were indispensable parties. Doe ex dem. McCall v. Carpenter, 18 How. 297, 59 U.S. 297, 15 L.Ed. 389. This seems true even under modern statute, since power to sell the corpus and divide the proceeds when necessary is contemplated.

What grounds for the exercise of original jurisdiction by this Court or for the independent right of retention of the cause on removal, are left? There appear only two further possibilities meriting consideration: That either by virtue of the Constitution of the United States, inherent judicial power, an implied statutory plan, or otherwise, the mere fact that the United States is a party gives rise to jurisdiction here; or that this is a suit arising under the Constitution or Laws of the United States. The Government vigorously advances both.

▇ The judicial power of the United States extends to suits in which the United States is a party and to cases arising under the Constitution, laws and treaties of the United States. Article III, Section 2, Constitution of the United States. This provision of the Constitution in and of itself does not afford this court jurisdiction. It is not self-executing. United States district courts are courts of limited jurisdiction. The congressional power to ordain and establish federal courts includes the power of investing them with jurisdiction either limited, concurrent or exclusive, and of withholding jurisdiction from them in the exact degree and character which Congress may deem proper for the public good. Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329; Lauf v. E. G. Shinner & Co., Inc., 303 U.S. 323, 58 S.Ct. 578, 85 L.Ed. 872; Hallowell v. Commons, 239 U.S. 506, 36 S.Ct. 202, 60 L.Ed. 409; Cary v. Curtis, 3 How. 236, 44 U.S. 236, 11 L.Ed. 576.

As was said in National Mut. Ins. Co. of District of Columbia v. Tidewater Transfer Co., Inc., 337 U.S. 582, 69 S.Ct. 1173, 1174, 93 L.Ed. 1556, (a decision not closely in point but replete with helpful views of both majority and dissenting justices), "The history of the controversy begins with that of the Republic." The First Congress passed "An Act to establish the Judicial Courts of the United States," approved September 25, 1789, 1 Stat. 73, 93. In private litigation, the Act made no use of the grant of power over cases arising under the Constitution or laws of the United States and it did not in terms contemplate the possibility of suits against the United States. It did grant jurisdiction concurrent with the state courts of all civil suits at common law or in equity in which the United States was plaintiff, or petitioner and the matter in dispute exceeded a specified amount depending on whether a circuit or district court was involved. Space will not permit, and it probably would be fruitless, to sketch the history of the idea of suits against the United States from that time to the adoption of Section 666. The problem of jurisdiction to entertain suits against the United States, as distinguished from an agency or instrumentality thereof, was theretofore completely overshadowed by the concept of immunity from suits. The legislative plan was to waive sovereign immunity by designating the court or courts to exercise jurisdiction over suits against the United States in special cases. As has already been seen, Section 666 is a departure from this plan.

Except as otherwise provided by Act of Congress, the district courts have been granted jurisdiction in all civil actions, suits or proceedings commenced by the United States or by any agency or officer thereof, expressly authorized to sue by Act of Congress. 28 U.S.C.A. § 1345. No such general jurisdiction has been vested in the United States district courts by provisions governing the United States as defendant, for 28 U.S.C.A. § 1346 on the subject is as follows:

"(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

"(1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws, (i) if the claim does not exceed $10,000 or (ii) even if the claim exceeds $10,000 if the collector of internal revenue by whom such tax, penalty or sum was collected is dead or is not in office as collector of internal revenue when such action is commenced;

"(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

"(b) [Tort Claims provisions not pertinent]

"(c) The jurisdiction conferred by this section includes jurisdiction of any set-off, counterclaim, or other claim or demand whatever on the part of the United States against any plaintiff commencing an action under this section.

"(d) The district courts shall not have jurisdiction under this section of:

"(1) Any civil action or claim for a pension;

"(2) Any civil action to recover fees, salary, or compensation for official services of officers of the United States."

The Government here contends that either Section 666 or the foregoing general statute, or both, contemplate that the United States district courts shall have original jurisdiction in all cases where the United States is a party defendant, and that in any event, United States courts, by their very nature, were created to entertain litigation in which the United States was involved and that, therefore, there is, as I take their arguments, an implied jurisdiction over such suits or at least a jurisdiction flowing directly from the constitutional provision extending the judicial power to such courts. With these contentions, I cannot agree. If the statute last quoted were intended to vest jurisdiction beyond its terms where the United States was involved as a party defendant, there could and would have been used language comparable to the broad language covering the United States as a party plaintiff.

It is true that language in various cases affords some support to these ideas. In United States v. Lee, 106 U.S. 196, 1 S.Ct. 240, 263, 27 L.Ed. 171, it is said:

"If it be said that the proposition here established may subject the property, the officers of the United States, and the performance of their indispensible functions to hostile proceedings in the state courts, the answer is that no case can arise in a state court where the interests, the property, the rights, or the authority of the federal government may come, in question, which cannot be removed into a court of the United States under existing laws."

This, however, was dicta and in any event, it was speaking at a time when the concept of immunity from suits was a bar to almost every type of proceedings which was not expressly made removable to, or suable in, the United States district courts. In State of Minnesota v. Hitchcock, 185 U.S. 373, 22 S.Ct. 650, 46 L.Ed. 954, it was indicated that the question of jurisdiction need be pursued no further than to determine whether the United States is a party, whether plaintiff or defendant. This case, however, involved the original jurisdiction of the Supreme Court of the United States flowing directly from the constitutional grant rather than to that of inferior courts,

the jurisdiction of which is dependent upon statute.

In McCarty v. Hollis, 10 Cir., 1941, 120 F.2d 540, 542, this circuit held that the United States may institute and maintain in the federal courts appropriate suits for the enforcement of rights of its wards. The Government relies upon the following language in that opinion:

"The jurisdiction of a United States Court to entertain such a suit finds its source in section 2 Article III of the Constitution of the United States" which extends "to all controversies to which the United States is a party."

Obviously, reference was not to the jurisdiction of a particular court independently of statute but to the source of power when granted by Congress. Justice Storey's statement "that it would be a perfect novelty in the history of national jurisprudence, as well as of public law, that a sovereign had no authority to sue in his own courts," (Commentaries, 2 Ed. Boston, 1851 § 1674) must be understood as referring to the same phase. Of course, the sovereign has authority to sue in its own courts if it chooses to exercise that authority; but this begs the question of whether authority in a particular case has been exercised by Congress.

From State of Minnesota v. Hitchcock, supra, a statement is relied upon by the Government to the effect that "It could not fairly be adjudged that the judicial power of the United States extends to those cases in which the United States is a party plaintiff, and does not extend to those cases in which it is a party defendant." [185 U.S. 373, 22 S. Ct. 655] Minnesota, however, dealt with the original jurisdiction of the Supreme Court which is self-executing. Moreover, without seeking to further complicate this case by involving the novel doctrine announced in Williams v. United States, 289 U.S. 553, 53 S.Ct. 751, 752, 77 L.Ed. 1372, to the effect that the "judicial power of [the] United States extends to controversies to which [the] United States is a party plaintiff, or petitioner, but controversies to which [the] United States may be party defendant lie outside * * * scope of [the] judicial power vested in constitutional courts," it is enough to say here that even assuming that United States district courts under the constitutional powers may be invested by Congress with jurisdiction to entertain suits against the United States, we still must inquire whether Congress has so invested such jurisdiction as to a particular class of cases. If it has not, jurisdiction does not exist, despite the constitutional powers of Congress to grant such jurisdiction. If it has, the suits contemplated by such grant may be entertained, even though the power to make the grant of jurisdiction, conformable to Williams, supra, may be found in Article I rather than in Article III of the Constitution. See National Mut. Ins. Co. of District of Columbia v. Tidewater Transfer Co., Inc., supra.

The Government also cites the case of United States v. San Jacinto Tin Co., 125 U.S. 273, 8 S.Ct. 850, 31 L.Ed. 747, in support of its contention that the United States could sue as a party plaintiff without reference to any statutory provision. This case, however, did not involve the question of jurisdiction but only that of whether suits could be brought, in a court having jurisdiction, by the Attorney General of the United States in the absence of a statute expressly authorizing the Attorney General of the United States to bring the action. This is an entirely different question.

It seems manifest that Congress has not invested United States district courts with general jurisdiction over civil action suits merely on the ground that the United States is a party defendant. Andrews v. White, 6 Cir., 1955, 221 F.2d 790; Wells v. Long, 9 Cir., 1947, 162 F.2d 842; Welch v. Hamilton, D.C. S.D.Cal.N.D.1929, 33 F.2d 224; Lavenburg v. Universal Sportswear, Inc., D.C. S.D.N.Y.1950, 92 F.Supp. 473; 28 U.S. C.A. §.1346, supra.

But to say that the status of the United States as a party defendant does not give rise to the jurisdiction of the federal court in and of itself is not conclusive against the proposition that this very status may be an element in invoking jurisdiction on other grounds. It is urged by the Government that this case, in the light of facts of which the Court may take judicial notice, involves the property of the United States, and that it necessarily involves the Constitution and laws of the United States to the extent that its status and rights may be determined. Reliance is placed upon the following statute:

"The district courts shall have jurisdiction on all civil actions where in the matter in controversy exceeds the sum or value of $3,000, exclusive of interest and costs, and arises under the Constitution, laws or treaties of the United States." 28 U.S. C.A. § 1331.

The Government contends that implicit in every suit against the United States is a federal question so that the suit must be said to arise from the Constitution and laws of the United States. There has been little occasion in the past to consider this precise question of a constructive federal question when the United States is involved because of the historical commingling of concepts of sovereign immunity and jurisdiction. However, it is necessary to recognize that inherently any claim against the United States as such necessarily touches upon the Constitution and laws of the United States, since the United States can neither enjoy rights, nor suffer liability except by reason of its Constitution and laws.

This concept has not been without recognition in the past in another application. In Bank of United States v. Deveaux, 5 Cranch 61, 9 U.S. 61, 3 L.Ed. 38, it was determined that the first Bank of the United States could not sue in the federal courts merely because it was incorporated by an Act of Congress. Congress, in incorporation of the second bank, authorized such suits and thus, the

subsequent case of Osborn v. Bank of United States, 9 Wheat. 738, 22 U.S. 738, 68 L.Ed. 204, did not involve specifically the question of whether Congress had attempted a grant of jurisdiction. The question was whether Congress had power to confer jurisdiction under the constitutional provision extending the judicial power to suits arising under the constitution or laws of the United States. The answer was in the affirmative. In Union Pac. R. Co. v. Myers, 115 U.S. 1, 5 S.Ct. 1113, 29 L.Ed. 319 (the so-called "railroad removal cases"), there was no express grant by Congress based upon federal incorporation. The broad question was considered of whether suits against corporations created by, and organized under, acts of Congress were suits arising under the laws of the United States within the contemplation of a general grant of jurisdiction in such cases. Adhering to the doctrine of Osborn v. Bank of United States, supra, Justice Bradley, speaking for the court, stated:

"An examination of those acts of Congress shows that the corporations now before us not only derived their existence but their powers, their functions, their duties and a large portion of their resources from those acts, and, by virtue thereof, sustain important relations to the Government of the United States."

The doctrine of the railroad removal cases has been reaffirmed in numerous cases, including Sloan Shipyards Corporation v. United States Shipping Board Emergency Fleet Corporation, 258 U.S. 549, 42 S.Ct. 386, 66 L.Ed. 762; American Bank and Trust Company v. Federal Reserve Bank of Atlanta, Ga., 256 U.S. 350, 41 S.Ct. 499, 65 L.Ed. 983; Matter of Dunn, 212 U.S. 374, 29 S.Ct. 299, 53 L.Ed. 558; Texas & Pacific Ry. Co. v. Cody, 166 U.S. 606, 17 S.Ct. 703, 41 L. Ed. 1132. This type of jurisdiction, however, was later withdrawn except where the national government owns more than one-half of the capital stock. Perpetual Building and Loan Association v. Series Directors of Equitable Build-

ing and Loan Association, Series No. 52, 4 Cir., 1954, 217 F.2d 1 and Sabin v. Home Owners' Loan Corporation, 10 Cir., 1945, 147 F.2d 653, certiorari denied 326 U.S. 759, 66 S.Ct. 96, 90 L.Ed. 456. In the last two cases, the federal corporations were wholly owned by the United States, and in one, all defendants had joined in the petition to remove while in the other, the claim affecting the petitioning federal corporation was held separable. In Fash v. First Nat. Bank of Alva, Okl., 10 Cir., 1937, 89 F.2d 110, a refusal to remand was upheld in a suit against a national bank and its receiver and relating to the winding up of its affairs on the ground that it arose under the laws of the United States. However, there apparently were circumstances involved there which were considered sufficient to raise the question, and it is not clear that the case turned upon the theory of a constructive federal question. Be this as it may, this concept might well be controlling here were it not for two decisions by the Supreme Court of the United States limiting the doctrine to federal corporations without extension, and almost expressly indicating that it has no application to such a situation as is here presented.

In People of Puerto Rico v. Russell & Co., Sucesores, S.en.C., 288 U.S. 476, 53 S.Ct. 447, 77 L.Ed. 903, it was held that a suit by the People of Puerto Rico to recover tax assessments levied under an act of the territorial legislature was not removable as "a suit arising under the laws of the United States" although authority to maintain the suit arose from an Act of Congress; federal jurisdiction cannot be invoked, says the Supreme Court of the United States, merely because plaintiff's right to sue is derived from federal law or because the property involved was obtained under federal statute; and such a suit was not removable as a "suit arising under the laws of the United States" although the status of plaintiff as a political entity rested on an Act of Congress. Taking cognizance of the railroad removal cases, supra, and noting that their doctrine has not been extended to other classes of cases and has been restricted by other statutes, Justice Stone, speaking for the unanimous court, stated:

"We should fly in the face of this legislative policy and disregard precedents which we think controlling were we to extend the doctrine now."

In answer to the argument that People of Puerto Rico were recognized as a political entity by an Act of Congress under which the Government was organized, it was pointed out that a suit does not arise under the Constitution or laws of the United States merely because a state is the plaintiff, though the state derives the authority to maintain its suits from the federal constitution and laws. This reasoning seems conclusive against the Government's contention that a constructive federal question is here involved.

In Gully v. First National Bank in Meridian, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70, the Supreme Court also remanded a removed case to the local court from which it was removed, quoting with approval from People of Puerto Rico v. Russell & Co., Sucesores, S. en. C., supra. The circumstances in Gully v. First National Bank in Meridian, supra, are less closely in point, yet the comprehensive decision specifically answers almost all of the other problems presented by the Government's argument on this phase of the questions which are not specifically answered by People of Puerto Rico v. Russell & Co., Sucesores, S.en.C., supra. Mr. Justice Cardozo reviewed the elements necessary for a case to arise under the Constitution or laws of the United States: The right or immunity involved must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect and defeated if they receive another; a genuine and present controversy and not merely a conjectural one must exist with reference thereto, and the controversy must be disclosed on the face of the complaint unaided by the answer or the petition for removal. It is pointed out that not every question of federal law emerging in the suit is

proof that a federal law is the basis of the suit; and that the existence of a federal law permitting taxation of the shares of a national bank did not change the basis of the suit which was still the statute of the state, though the federal law was evidence to prove that the state statute was valid.

 This view is further supported by Gableman v. Peoria, Decatur & Evansville Railway Company, 179 U.S. 335, 21 S.Ct. 171, 45 L.Ed. 220, where the question of whether the status of a federal receiver in and of itself raised a federal question was answered in the negative. In view of these decisions, I cannot accept the broad doctrine expressed in Torquay Corporation v. Radio Corporation of America, D.C.S.D.N.Y.1932, 2 F. Supp. 841, 844, and urged by the Government that "as all of us know, a suit against the United States raises a federal question." See also annotations touching upon the subject in 12 A.L.R. 2d 5; 14 A.L.R.2d 1492. The latter annotation follows the Tenth Circuit case of Andersen v. Bingham & G. Ry. Co., 169 F.2d 328, 14 A.L.R.2d 987, which sets out the elements of federal jurisdiction consistent with what was determined in Gully v. First National Bank in Meridian, supra. Mere status of the United States as defendant is not demonstrative that the action arises under the laws of the United States and on this point the authorities of Gully, Puerto Rico and Gableman should be sufficient. Further reflection upon the provisions of law governing the United States as party defendant confirms. If mere status of the United States as a defendant automatically raises a federal question for the purpose of jurisdiction, there would be no point to the provisions of law limiting jurisdiction to certain cases when the United States is a party. 28 U.S.C.A. § 1346. It is not enough to say that Congress in these limitations confused jurisdiction with immunity from suit, since if jurisdiction has not been granted by Congress, irrespective of the reason for such failure, it does not exist.

 There being no constructive federal question affording this court jurisdiction, are there such circumstances evident upon the face of the original petition of the State Engineer initiating the action in the state court, or the petition for removal of the Government, or of which the Court can take judicial notice, which demonstrate that a federal question is involved for the purposes of jurisdiction? The answer must be in the negative. Jurisdiction could thus be demonstrated, see Mitchell v. Smale, 140 U.S. 406, 11 S.Ct. 819, 35 L.Ed. 442, if sufficient appears on the face of the complaint or petition, Postal Telegraph Cable Co. v. State of Alabama, 155 U.S. 482, 15 S.Ct. 192, 39 L.Ed. 231, to invoke it. Sufficient does not appear here and the implications are contrary to that of a federal question being present. Congress has followed a consistent policy of adherence to state law with regard to the acquisition and administration of water rights by the federal government. Act of July 26, 1866, 14 Stat. 253; Act of July 9, 1870, 16 Stat. 218; The Desert Land Act of March 3, 1877, 19 Stat. 377, 43 U.S.C.A. § 321 et seq.; Section 8 of the Reclamation Act of 1902, 32 Stat. 390, 43 U.S.C.A. §§ 372, 383; Sections 9(b) and 27 of the Federal Power Act of 1920, 41 Stat. 1068, 1077, 16 U.S. C.A. §§ 802(b), 821; Section 3 of the Taylor Grazing Act of 1934, 48 Stat. 1269, 43 U.S.C.A. § 315b; The Great Plains Water Conservation and Utilization Projects Act of October 14, 1920, 54 Stat. 1119, 16 U.S.C.A. § 590y et seq., amending The Water Conservation Act of 1939, 53 Stat. 1418, 1419; Section 1 of the Flood Control Act of December 22, 1944, 58 Stat. 887, 33 U.S.C.A. § 701–1; The National Parks Act of 1946, 60 Stat. 885, 16 U.S.C.A. § 17j–2; Section 208 of the Act of July 10, 1952, 43 U.S. C.A. § 666 supra; Section 3(e) of the Submerged Lands Act of May 22, 1953, 67 Stat. 31, 43 U.S.C.A. § 1311(e); The Act of July 23, 1955, being section 4(b) of Public Law 167, 84th Congress, 30 U. S.C.A. § 612(b); State of Nebraska v.

State of Wyoming, 325 U.S. 589, 65 S.Ct. 1332, 89 L.Ed. 1815; California-Oregon Power Co. v. Beaver Portland Cement Co., 295 U.S. 142, 55 S.Ct. 725, 79 L.Ed. 1356; but see Federal Power Commission v. Oregon, 349 U.S. 435, 75 S.Ct. 832, 99 L.Ed. 1215.

There is nothing in the record to show that any claims involved in the state proceedings arise under the Constitution and laws of the United States within the concept of the People of Puerto Rico and Gully cases. Certainly, if any such controversy is possible it is "merely a conjectural one". It is not "disclosed upon the face of the complaint, unaided by the answer or by the petition for removal" [299 U.S. 109, 57 S.Ct. 98] and indeed, it is not disclosed at all. Mr. Justice Cardozo pointed out that the existence of federal law permitting state action in Gully v. First National Bank in Meridian, supra, did not change the basis of the suit which was still the statute of the state, though the federal law was evidence to prove that the state statute was valid. So it also appears that the existence of Section 666, or any other federal statute requiring conformance with state law or procedure, does not change the basis of the state proceedings. Nor is there anything of which the Court may take judicial notice that aids jurisdiction within the doctrine of Spokane Falls & N. Ry. Co. v. Ziegler, 167 U.S. 65, 17 S.Ct. 728, 42 L.Ed. 79.

▇▇ Another obstacle to removal could be the absence of any showing of the amount involved. 28 U.S.C.A. § 1331; see St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845; McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135; State of So. Carolina v. Seymour, 153 U.S. 353, 14 S.Ct. 871, 38 L.Ed. 742; Leidecker Tool Co. v. Laster, 10 Cir., 1930, 39 F.2d 615. More substantial is the further objection that all defendants have not joined in the petition for removal from state to federal court if the removal is sought on the ground that the suit arises under the Constitution and laws of the United States. Texas & Pacific Railway Co. v. Eastin & Knox, 214 U.S. 153, 29 S.Ct. 564, 53 L.Ed. 946; Chicago R. I. & Pac. Ry. Co. v. Martin, 178 U.S. 245, 20 S.Ct. 854, 44 L.Ed. 1055; 28 U.S.C.A. § 1441; see also late case of State of Colorado ex rel. Land Acquisition Commission v. American Machine & Foundry Co., D.C. D.Colo.1956, 143 F.Supp. 703. The only exception to this requirement is when there is a separate or independent claim or cause of action involving the defendant seeking removal, but on this latter question, the pleading of the plaintiff controls. American Fire & Casualty Co. v. Finn, 341 U.S. 6, 71 S.Ct. 534, 95 L. Ed. 702; Preas v. Phebus, 10 Cir., 1952, 195 F.2d 61; Edwards v. E. I. Du Pont de Nemours & Co., 5 Cir., 1950, 183 F. 2d 165; 28 U.S.C.A. § 1441(c).

▇ We may accept as a premise that where there are shown to be separate and distinct causes of action upon either of which a separate suit could have been maintained and a determination of neither of which is essential to the disposition of the other, they are separable controversies within the meaning of the Act of Congress governing removal. City of Winfield v. Wichita Natural Gas Co., 8 Cir., Kansas, 1920, 267 F. 47. In Carothers v. McKinley Mining & Smelting Co., C.C.Dist.Nev.1902, 116 F. 947 involving diversity jurisdiction, a suit to quiet title was brought in a state court between a number of defendants for the purpose of obtaining an adjudication of all claims adverse to the complainant which might exist in favor of any of the defendants. The bill contained no averment that the defendants claimed through a common source of title. The cause was held to be severable as to each defendant and it was determined that a defendant who was a citizen of a different state from complainant might remove the cause.

▇ The similarity between an ordinary suit to quiet title and a proceeding for the general determination of water rights is not to be discounted. However, in connection with separable controver-

sies it seems doubtful that the similarity is complete even though we accept the doctrine of the Nevada case. All claims to the use of water from a common source are correlative, and an award of water cannot be made to one without reference to the rights of others from the same source. Certainly, the rights cannot be administered independently. See People of State of California v. United States, 9 Cir., 1956, 235 F.2d 647. If it be said that separable claims are still possible the answer must be that nothing before the Court here suggests any separable claims on the part of the United States. It may even be disclosed ultimately that the claims of the United States are not substantial and involve no real controversy under either the federal or state law. (See affidavit in support of petition of United States for order permitting the taking of depositions before answer in which it is alleged inter alia that affiant has "no knowledge of any conflict between the United States of America and any other water users in the streams alluded to * * *, and knows of no reason for the United States of America being served or joined in this proceeding.") On the other hand, it may be that the Government claims from the same source of title as that of many or all of the other defendants. Retention of the case by this Court should not be based upon such speculation. The point has not been made, but if the Government should seek to rely upon the contention that there is no showing that claimants other than the Government have yet been served, it seems sufficient to point out that there is no showing either that they have not been, and it may be presumed that the United States is not the only claimant on the river and that it is not the only one served. Again, that removal may be premature is no reason for retention here. It has not been established that the general rule is inapplicable to the effect that where no separable controversy exists, failure of all defendants to join in a petition for removal dictates denial thereof even though as to one defendant the suit might be said

to arise under the laws of the United States. Chicago R. I. & Pac. Ry. Co. v. Martin, supra; see also Matter of Dunn, supra.

It is of interest to note that the Barrett Amendment to S. Bill 863, which was under consideration by the subcommittee on irrigation and reclamation of the Committee on Interior and Insular Affairs, United States Senate, 84th Congress, 2d Session, March, 1956, proposed a detailed restatement of policy of compliance with state law with reference to the government's water rights, including the substance of Section 666, but did contain the express provision that "on petition of the United States any such suit may be removed pursuant to Title 28 of the United States Code Annotated from a state court to a district court of the United States for the district and division in which such action is pending." If this broad right is recognized on petition of the United States alone, I am convinced that it must be by virtue of some such new legislation rather than under existing law. I cannot treat the existing law as if the provision for removal proposed in the Barrett Bill had been adopted by Congress.

There is a final phase involving the practicalities of the situation which has a two-fold significance. It indicates, again, that Congress could not have intended that every suit for the adjudication or administration of water rights in which the United States was made a party under Section 666 should be brought in, or could be removed to, the federal courts. It further is persuasive at the present juncture that even though jurisdiction on removal might exist, this Court should be inclined to exercise whatever discretion it may have to relinquish the proceedings to the state courts until such time, if at all, matters properly of federal cognizance are more appropriately shown.

Even though jurisdiction may be conferred upon district courts of the United States, there is no absolute rule that those courts must exercise that jurisdiction where it is not made exclu-

sive. Plaquemines Tropical Fruit Co. v. Henderson, 170 U.S. 511, 18 S.Ct. 685, 42 L.Ed. 1126; Ames v. State of Kansas ex rel. Johnston, 111 U.S. 449, 4 S.Ct. 437, 28 L.Ed. 482. Upon the state courts, equally with the courts of the Union, rest the obligation to guard and enforce every right secured by the Constitution and laws of the United States whenever those rights are involved in any suit or proceeding before them. Robb v. Connolly, 111 U.S. 624, 4 S.Ct. 544, 28 L.Ed. 542. A statutory grant of jurisdiction to the district court leaves open the question of the propriety of its exercise under particular circumstances; and the character and adequacy of concurrent state jurisdiction may require, in the proper exercise of the discretion of the federal court, that jurisdiction should be relinquished in favor of state courts. Commonwealth of Pennsylvania v. Williams, 294 U.S. 176, 55 S.Ct. 380, 79 L. Ed. 841; Penn General Casualty Co. v. Commonwealth of Pennsylvania ex rel. Schnader, 294 U.S. 189, 55 S.Ct. 386, 79 L.Ed. 850, 856; General Investment & Service Corporation, Inc. v. Wichita Water Company, 10 Cir., 1956, 236 F.2d 464, 468, in which the Court said:

> "The principle is well established and without dispute that under the rule of comity under our dual system of Government in cases involving state laws, rules or regulations, equitable considerations will under certain circumstances require federal courts to stay their hands where the parties have an adequate, speedy and complete determination of the controversy in a state tribunal."

The state and federal courts have the obligation to guard and enforce every right secured by the Constitution and laws of the United States. United States v. Bank of New York & Trust Co., 296 U. S. 463, 56 S.Ct. 343, 80 L.Ed. 331.

These proceedings, initiated by the State of Utah, are essentially equitable in nature. They depend peculiarly upon machinery provided in the state statute and the integration of state administrative activities with court procedures.

Congress in Section 666 has expressed the policy of permitting the United States to be made a party defendant in such proceedings, and there are practical reasons that a recognition of its rights should be correlated with a determination of the rights of other users of the waters of the common source. As has been seen, there is a long-standing federal legislative policy of conformity by the federal government with state laws concerning the acquisition, ownership and administration of its water rights. Any judicial divergence within the purview of Federal Power Commission v. Oregon, supra, is not shown to be here involved. Water litigation is among the most complicated and protracted of that commonly prosecuted in the western states. I am personally aware, and I may judicially know from the published reports of the decisions concerning them, that there have been general determination proceedings in Utah which required almost the full attention of a Court for years, and that at present there are several such suits pending, one of which involves more than 2,000 different claimants. See Spanish Fork West Field Irr. Co. v. District Court of Salt Lake County, 99 Utah 527, 104 P.2d 353. The state judicial system naturally results in division among the various courts of general determination suits affecting streams in different parts of the state. If all general determination suits on the basis of the present showing are removable to the federal court merely because the United States is a party, it is reasonable to assume that most of them could be concentrated in this court. The resulting burden might be intolerable from the standpoint of judicial administration.

■ It is recognized, as the Government contends, that federal courts were established to expound federal laws. Stanley v. Schwalby, supra. It also has been said that the protection of the national judicial power within its proper sphere is indispensable in the maintenance of national supremacy and to protect the state from encroachment by the general government. Ableman v. Booth,

21 How. 506, 62 U.S. 506, 16 L.Ed. 169. But if removal of general adjudication suits can be accomplished on the present showing, there is danger that this court will become more concerned with the expounding and administration of state water laws than with the expounding of federal law.

Both from the standpoint of lack of jurisdiction to entertain such proceedings upon the present showing and for practical reasons indicating that if discretion exists it should not be retained here on that showing in the absence of a clear declaration by Congress to the contrary, it is my opinion that the suit should be remanded.

■■■ This is not to pass upon or conclude the question of whether the United States may later remove all or a segment of the proceedings if and when a federal question appears before the state court. A case not removable when commenced may afterwards become removable. Great Northern Ry. Co. v. Alexander, 246 U.S. 276, 38 S.Ct. 237, 62 L.Ed. 713; Fritzlen v. Boatmen's Bank, 212 U.S. 364, 29 S.Ct. 366, 53 L.Ed. 551. Remand of this cause now does not necessarily mean that the Government is barred from recourse to the federal courts in respect of the water rights in question should adequate bases later be disclosed. It may well be, in view of the facts that general determination suits do not involve the immediate filing of claims and that the claims when filed take the place of pleadings, that this special procedure will have to be reasonably reconciled to technical removal requirements within the framework of existing law in the absence of further enactments by Congress on the subject. These possibilities suggest themselves: The theory of rearrangement of parties when the claims have been filed in the general determination proceedings, State of Oklahoma ex rel. Williams v. Oklahoma National Gas Corporation, 10 Cir., 1936, 83 F.2d 986; the theory of intervention, Bond v. Tom, D. C.N.D.Okl.1938, 25 F.Supp. 157, affirmed United States v. Bond, 10 Cir., 1939, 108 F.2d 504; the theory that such claims as the United States may make would constitute removable counterclaims, 28 U.S.C.A. § 1346; the theory that until claims of others have been filed asserting rights against the United States, the question of removability is premature, see Remington v. Central Pacific Railroad Company, 198 U.S. 95, 25 S.Ct. 577, 49 L.Ed. 959. In re The Jarnecke Ditch, C.C.D.Ind.1895, 69 F. 161, where the report of commissioners was deemed the complaint rather than the original petition or process; see also Pacific Live Stock Co. v. Lewis, supra; but see McKay v. Rogers, 10 Cir., 1936, 82 F.2d 795; and finally, the possibility of suits in the federal courts by the United States as plaintiff for limited purposes with reference to its water rights notwithstanding the pendency of the general determination suit to which it is a party. Pacific Live Stock Co. v. Lewis, supra; People of the State of California v. United States, supra; United States v. McIntosh, D.C.E.D.Va.1932, 57 F.2d 573, see also 2 F.Supp. 244, 3 F.Supp. 715, affirmed, 4 Cir., 70 F.2d 507, certiorari denied 293 U.S. 586, 55 S.Ct. 101, 79 L.Ed. 682; United States v. Babcock, D.C.D.Ind., Ft. Wayne D., 1925, 6 F.2d 160, modified, 7 Cir., 1925, 9 F.2d 905; Mitchell v. Spanish Fork West Field Irrigation Co., 1 Utah 2d 313, 265 P.2d 1016; Smith v. District Court of Second Judicial District in and for Morgan County, 69 Utah 493, 256 P. 539.

The foregoing possibilities have been noticed only for additional assurance that the present construction of Section 666 and the right to removal of actions brought thereunder does not so unreasonably foreclose recourse to the federal courts under all conditions as to suggest the unlikelihood that Congress could have intended so far-reaching a step. I do not assume to comment on the desirability of the provisions of the Barrett Bill referred to above or other clarifying legislation on the right of removal. I am convinced, nonetheless, that the conclusions reached here not only are dictated by the terms of the Act in question and by the other considerations mentioned,

but that they are not incompatible with remedies of the general government essential under the Constitution.

The right to removal not having been established by the Government, this proceeding should be, and it is hereby, remanded to the District Court of the Third Judicial District of the State of Utah in and for Daggett County.